## SUBLEASE

THIS SUBLEASE (this "Sublease") is dated for reference purposes as of November __, 2016 (the "Effective Date"), and is made by and between ROCKET FUEL INC., a Delaware corporation ("Sublessor"), and NITEL, INC., an Illinois corporation ("Sublessee"). Sublessor and Sublessee hereby agree as follows:

1.      Recitals: This Sublease is made with reference to the fact that BRE RIVER NORTH POINT OWNER LLC ("Master Lessor") successor-in-interest to SRI TEN WEST MART LLC, as landlord, and Sublessor, as tenant, entered into that certain lease, dated as of February 19, 2014, as amended by that certain First Amendment to Lease dated April 4, 2014 (the "First Amendment"), as further amended by that certain Section Amendment to Lease dated June 21, 2016 (the "Second Amendment"), (collectively, the "Master Lease"), with respect to premises consisting of approximately 44,590 square feet of space, located on the 13th Floor at 350 North Orleans Street, Chicago, Illinois (the "Premises"). A copy of the Master Lease is attached hereto as Exhibit A.

2.      Premises: Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, a portion of the Premises consisting of approximately 32,115 rentable square feet of space located on the 13th Floor, described as Suite 1300N or Suite 1300 (hereinafter, the "Subleased Premises"). The Subleased Premises are more particularly described on Exhibit B attached hereto.

3.      Term:

A. Term. The term (the "Term") of this Sublease shall be for the period commencing on the later of (i) January 1, 2017 or (ii) thirty (30) days after Sublessor delivers possession of the Subleased Premises to Sublessee with the Furniture (defined below) (the "Commencement Date") and ending on June 30, 2021 (the "Expiration Date"), unless this Sublease is sooner terminated pursuant to its terms or the Master Lease is sooner terminated pursuant to its terms; provided, however, if Sublessee elects to occupy the Subleased Premises for the conduct of business during such early access period, then the Commencement Date shall occur upon such occupancy. If requested by either Sublessor, Sublessee or Master Lessor, the Sublessor and Sublessee shall memorialize in writing the Commencement Date.

Provided that the Master Lessor's consent to this Sublease has been obtained, Sublessor shall permit Sublessee to access the Subleased Premises for thirty (30) days prior to the Commencement Date, such occupancy shall be subject to all of the provisions of this Sublease, except for the obligation to pay Base Rent (as defined below). Any such early access shall be solely for the purpose of preparing the Subleased Premises for occupancy and not for the purpose of conducting business therein, and shall only be provided if the following conditions are met (i) Master Lessor's consent to this Sublease has been received, (ii) Sublessee has delivered to Sublessor the Security Deposit and first month's Base Rent as required under Paragraph 4 and (iii) Sublessee has delivered to Sublessor evidence of all insurance required under this Sublease.

B.      No Option to Extend. The parties hereby acknowledge that the expiration date of the Master Lease is June 30, 2021 and that Sublessee has no option to extend the Term of this Sublease.

4.      Rent:

A. Base Rent. Sublessee shall pay to Sublessor base rent for the Subleased Premises in accordance with the following schedule ("Base Rent"):

| Period | Monthly Base Rent |
|---|---|
| Commencement Date – Month 12 | $80,287.50 |
| Month 13 – Month 24 | $82,696.13 |
| Month 25 – Month 36 | $85,177.01 |
| Month 37 – Month 48 | $87,732.32 |
| Month 49 – June 30, 2021 | $90,364.29 |

Base Rent and Additional Rent, as defined in Paragraph 4.B below, shall be paid on or before the first (1st) day of each month. Base Rent and Additional Rent for any period during the Term hereof which is for less than one (1) month of the Term shall be a pro rata portion of the monthly installment based on a thirty (30) day month. If an increase in Base Rent becomes effective on a date other than the first day of a calendar month, the Base Rent for that month shall be the sum of the two applicable rates, each prorated for the portion of the month during which the rate is in effect. Base Rent and Additional Rent shall be payable without notice or demand and without any deduction, offset, or abatement, in lawful money of the United States of America. Base Rent and Additional Rent shall be paid directly to Sublessor at 1900 Seaport Boulevard, Redwood City, California 94063 Attention: Accounts Receivable or such other address as may be designated in writing by Sublessor.

A.     Additional Rent. All monies other than Base Rent required to be paid by Sublessor under the Master Lease as to the Subleased Premises, including, without limitation, any amounts payable by Sublessor to Master Lessor as "Operating Expenses" and "Tax Expenses" (as defined in Section 7 of the Master Lease) as well as additional utilities and services, shall be paid by Sublessee hereunder as and when such amounts are due under the Master Lease, as incorporated herein, provided however Sublessee's Base Year shall be the Calendar Year 2017 and Sublessee shall be responsible for 72% ("Sublessee's Proportionate Share") of Operating Expenses and Tax Expenses charged under the Master Lease in excess of the 2017 Base Year. All such amounts shall be deemed additional rent ("Additional Rent"). Base Rent and Additional Rent hereinafter collectively shall be referred to as "Rent". Subject to the foregoing, Sublessee and Sublessor agree, as a material part of the consideration given by Sublessee to Sublessor for this Sublease, that Sublessee shall pay all costs, expenses, taxes, insurance, maintenance and other charges of every kind and nature arising in connection with this Sublease, the Master Lease as to the Subleased Premises or the Subleased Premises, such that Sublessor shall receive, as a net consideration for this Sublease, the Base Rent payable under Paragraph 4.A. hereof. Notwithstanding the foregoing, in the event any cost or expense is incurred under the Master Lease or under this Sublease for Sublessee's sole benefit (including the disproportionate use of utilities) or as a result of Sublessee's request for certain services (such as after-hours HVAC charges, which may be incurred for the entire Premises if requested by Sublessee for the Subleased Premises) or the provision of services to the Subleased Premises, Sublessee shall pay the entire cost thereof. In addition, (i) Sublessee shall reimburse Sublessor for "Sublessee's Proportionate Share" of any janitorial services provided by Sublessor to the Subleased Premises and (ii) Sublessor shall provide Sublessee

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-2-

either monthly or quarterly invoices reflecting Sublessee's Proportionate Share of electrical costs with respect to the Premises, and such invoice will contain copies of the applicable monthly electrical bills from the utility company.

        B.  <u>Payment of First Month's Rent</u>. Upon execution hereof by Sublessee and consent by Master Lessor to this Sublease, Sublessee shall pay to Sublessor the sum of Eighty Thousand Two Hundred Eighty-Seven and 50/100 Dollars ($80,287.50), which shall constitute Base Rent for the first month of the Term.

        C.  <u>Base Rent Abatement</u>. Provided Sublessee is not then in default under this Sublease, Base Rent shall be abated for Month 1 of the Term.

        5.    <u>Late Charge</u>: If Sublessee fails to pay to Sublessor any amount due hereunder when due, Sublessee shall pay Sublessor upon demand a late charge as set forth in Section 31 of the Master Lease, as incorporated herein.

        6.  <u>Security Deposit</u>: Upon execution hereof by Sublessee and consent by Master Lessor to this Sublease, Sublessee shall deposit with Sublessor the sum of Two Hundred Seventy-One Thousand Ninety-Two and 87/100 Dollars ($271,092.87) (the "Security Deposit"), in cash, as security for the performance by Sublessee of the terms and conditions of this Sublease. If Sublessee fails to pay Rent or other charges due hereunder or otherwise defaults with respect to any provision of this Sublease, then Sublessor may draw upon, use, apply or retain all or any portion of the Security Deposit for the payment of any Rent or other charge in default, for the payment of any other sum which Sublessor has become obligated to pay by reason of Sublessee's default, or to compensate Sublessor for any loss or damage which Sublessor has suffered thereby. If Sublessor so uses or applies all or any portion of the Security Deposit, then Sublessee, within ten (10) days after demand therefor, shall deposit cash with Sublessor in the amount required to restore the Security Deposit to the full amount stated above. No later than thirty (30) days after the expiration of this Sublease, if Sublessee is not in default, Sublessor shall return to Sublessee so much of the Security Deposit as has not been applied by Sublessor pursuant to this paragraph, or which is not otherwise required to cure Sublessee's defaults.

        7.    <u>Holdover</u>: The parties hereby acknowledge that the expiration date of the Master Lease is June 30, 2021 and that it is therefore critical that Sublessee surrender the Subleased Premises to Sublessor no later than the Expiration Date in accordance with the terms of this Sublease. In the event that Sublessee does not surrender the Subleased Premises by the Expiration Date in accordance with the terms of this Sublease, Sublessee shall indemnify, defend, protect and hold harmless Sublessor from and against all loss and liability resulting from Sublessee's delay in surrendering the Subleased Premises and pay Sublessor holdover rent as provided in Sections 20.b. and 20.c. of the Master Lease as to the entire Premises.

        8.  <u>Repairs</u>: Sublessor shall deliver the Subleased Premises to Sublessee in "broom clean" condition. The parties acknowledge and agree that Sublessee is subleasing the Subleased Premises on an "as is" basis, and that Sublessor has made no representations or warranties with respect to the condition of the Subleased Premises. Sublessor shall have no obligation whatsoever to make or pay the cost of any alterations, improvements or repairs to the Subleased Premises, including, without limitation, any improvement or repair required to comply with any law, regulation, building code or ordinance (including the Americans with Disabilities Act of 1990). Master Lessor shall be solely responsible for

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-3-

performance of any repairs required to be performed by Master Lessor under the terms of the Master Lease.

9.   Indemnity: Except to the extent caused by the negligence or willful misconduct of Sublessor, its agents, employees, contractors or invitees, Sublessee shall indemnify, defend with counsel reasonably acceptable to Sublessor, protect and hold Sublessor harmless from and against any and all losses, claims, liabilities, judgments, causes of action, damages, costs and expenses (including reasonable attorneys' and experts' fees), caused by or arising in connection with: (i) the use, occupancy or condition of the Subleased Premises by Sublessee; (ii) the negligence or willful misconduct of Sublessee or its employees, contractors, agents or invitees; or (iii) a breach of Sublessee's obligations under this Sublease or the provisions of the Master Lease assumed by Sublessee hereunder.  Sublessee's indemnification of Sublessor shall survive termination of this Sublease.

10.   Right to Cure Defaults: If Sublessee fails to pay any sum of money under this Sublease, or fails to perform any other act on its part to be performed hereunder, then Sublessor may, but shall not be obligated to, after passage of any applicable notice and cure periods, make such payment or perform such act.  All such sums paid, and all reasonable costs and expenses of performing any such act, shall be deemed Additional Rent payable by Sublessee to Sublessor upon demand, together with interest thereon at the Interest Rate from the date of the expenditure until repaid.

11.   Assignment and Subletting.  Sublessee may not assign this Sublease, sublet the Subleased Premises, transfer any interest of Sublessee therein or permit any use of the Subleased Premises by another party (collectively, "Transfer"), without the prior written consent of Sublessor, which consent shall not be unreasonably withheld, conditioned or delayed (provided however, it shall be deemed reasonable for Sublessor to withhold its consent if Master Lessor withholds consent), and Master Lessor.  A consent to one Transfer shall not be deemed to be a consent to any subsequent Transfer.  Any Transfer without such consent shall be void and, at the option of Sublessor, shall terminate this Sublease. Sublessor's waiver or consent to any assignment or subletting shall be ineffective unless set forth in writing, and Sublessee shall not be relieved from any of its obligations under this Sublease unless the consent expressly so provides.  Any Transfer shall be subject to the terms of Section 13 of the Master Lease.

12.   Use:

A.   Sublessee may use the Subleased Premises only for the uses identified in Section 8 of the Master Lease.  Sublessee shall indemnify, defend with counsel reasonably acceptable to Sublessor and hold Sublessor harmless from and against all claims, actions, suits, proceedings, judgements, losses, costs, personal injuries, damages, liabilities, deficiencies, fines, penalties, damages, attorneys' fees, consultants' fees, investigations, detoxifications, remediations, removals, and expenses of every type and nature, to the extent caused by the release, disposal, discharge or emission of hazardous materials on or about the Subleased Premises during the Term of this Sublease by Sublessee or its agents, contractors, invitees or employees.

B.   Sublessee shall not do or permit anything to be done in or about the Subleased Premises which would (i) injure the Subleased Premises; or (ii) vibrate, shake, overload, or impair the efficient operation of the Subleased Premises or the sprinkler systems, heating, ventilating or air conditioning equipment, or utilities systems located therein.  Sublessee shall not store any materials, supplies, finished or unfinished products or articles of any nature outside of the Subleased Premises.  For

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-4-

purposes of this Sublease and Sections 8.a. and 8.c. of the Master Lease, Sublessee shall comply with all reasonable rules and regulations promulgated from time to time by Sublessor and Master Lessor. Unless Sublessee engages directly with the service provider, Sublessor shall provide Sublessee with access cards to the Subleased Premises and to the Building for each employee at a cost of $20 per card. All such access cards must be returned to Sublessor upon the earlier of such employee's termination or the expiration of the Term.

13.    Effect of Conveyance:  As used in this Sublease, the term "Sublessor" means the holder of the tenant's interest under the Master Lease. In the event of any assignment, transfer or termination of the tenant's interest under the Master Lease, which assignment, transfer or termination may occur at any time during the Term hereof in Sublessor's sole discretion, Sublessor shall be and hereby is entirely relieved of all covenants and obligations of Sublessor hereunder, and it shall be deemed and construed, without further agreement between the parties, that any transferee has assumed and shall carry out all covenants and obligations thereafter to be performed by Sublessor hereunder.  Sublessor may transfer and deliver any security of Sublessee to the transferee of the tenant's interest under the Master Lease, and thereupon Sublessor shall be discharged from any further liability with respect thereto.

14.    Delivery and Acceptance:  If Sublessor fails to deliver possession of the Subleased Premises to Sublessee for any reason whatsoever, then this Sublease shall not be void or voidable, nor shall Sublessor be liable to Sublessee for any loss or damage; provided, however, that in such event, Rent shall abate until Sublessor delivers possession of the Subleased Premises to Sublessee. By taking possession of the Subleased Premises, Sublessee conclusively shall be deemed to have accepted the Subleased Premises in their as-is, then-existing condition, without any warranty whatsoever of Sublessor with respect thereto. Sublessor agrees that if the Commencement Date does not occur on or before February 1, 2017 for any reason other than Force Majeure (as defined in Section 17(e) of the Master Lease, as incorporated herein), Sublessee shall receive one (1) day of abated Base Rent for each day of the period commencing on February 1, 2017 and ending on the Commencement Date (the "Rent Penalty"). In the event that the Commencement Date does not occur on or before April 1, 2017 for any reason other than Force Majeure, then Sublessee may, at its option, by written notice to Sublessor delivered no later than April 10, 2017, terminate this Sublease and the Base Rent and Security Deposit paid to Sublessor shall be immediately returned to Sublessee. If Sublessee fails to deliver a termination notice as aforesaid, then the Rent Penalty shall stop accruing as of April 1, 2017.

15. Improvements:  No alteration or improvements shall be made to the Subleased Premises, except in accordance with the Master Lease, and with the prior written consent of both Sublessor, whose consent shall not be unreasonably withheld, conditioned or delayed (provided however, it shall be deemed reasonable for Sublessor to withhold its consent if Master Lessor withholds consent), and Master Lessor.

16.    Insurance:  Sublessee shall obtain and keep in full force and effect, at Sublessee's sole cost and expense, during the Term the insurance required under Section 15 of the Master Lease. Sublessee shall name Master Lessor and Sublessor as additional insureds under its liability insurance policy.  The release and waiver of subrogation set forth in Section 16 of the Master Lease, as incorporated herein, shall be binding on the parties.

17.    Default; Remedies:  Sublessee shall be in material default of its obligations under this Sublease upon the occurrence of any of the events set forth in Section 25.a. of the Master Lease, as incorporated herein, and by applicable law. In the event of any default by Sublessee, Sublessor shall

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-5-

have all remedies provided pursuant to Section 25.b. of the Master Lease and by applicable law. Sublessor may resort to its remedies cumulatively or in the alternative.

18.     Surrender:  Prior to expiration of this Sublease, Sublessee shall remove all of its personal property and trade fixtures as well as all wiring and cabling, and shall surrender the Subleased Premises to Sublessor in good condition, free of hazardous materials caused by Sublessee, reasonable wear and tear, casualty and condemnation excepted. If the Subleased Premises are not so surrendered, then Sublessee shall be liable to Sublessor for all costs incurred by Sublessor in returning the Subleased Premises to the required condition, plus interest thereon at the Interest Rate.

19.     Broker:  Sublessor and Sublessee each represent to the other that they have dealt with no real estate brokers, finders, agents or salesmen other than Newmark Grubb Knight Frank, representing Sublessor, and CBRE, representing Sublessee, in connection with this transaction.  Each party agrees to hold the other party harmless from and against all claims for brokerage commissions, finder's fees or other compensation made by any other agent, broker, salesman or finder as a consequence of such party's actions or dealings with such agent, broker, salesman, or finder.

20.     Notices:  Unless at least five (5) days' prior written notice is given in the manner set forth in this paragraph, the address of each party for all purposes connected with this Sublease shall be that address set forth below its signature at the end of this Sublease.  All notices, demands or communications in connection with this Sublease shall be (a) personally delivered; or (b) properly addressed and (i) submitted to an overnight courier service, charges prepaid, or (ii) deposited in the mail (certified, return receipt requested, and postage prepaid).  Notices shall be deemed delivered upon receipt, if personally delivered, one (1) business day after being submitted to an overnight courier service and three (3) business days after mailing, if mailed as set forth above. All notices given to Master Lessor under the Master Lease shall be considered received only when delivered in accordance with the Master Lease.

21.     Miscellaneous:  This Sublease shall in all respects be governed by and construed in accordance with the laws of the State of Illinois.  If any term of this Sublease is held to be invalid or unenforceable by any court of competent jurisdiction, then the remainder of this Sublease shall remain in full force and effect to the fullest extent possible under the law, and shall not be affected or impaired. This Sublease may not be amended except by the written agreement of all parties hereto.  If either party brings any action or legal proceeding with respect to this Sublease, the prevailing party shall be entitled to recover reasonable attorneys' fees, experts' fees, and court costs.  If either party becomes the subject of any bankruptcy or insolvency proceeding, then the other party shall be entitled to recover all attorneys' fees, experts' fees, and other costs incurred by that party in protecting its rights hereunder and in obtaining any other relief as a consequence of such proceeding.

22.     Other Sublease Terms:

A.     Incorporation By Reference.  Except as set forth below, the terms and conditions of this Sublease shall include all of the terms of the Master Lease and such terms are incorporated into this Sublease as if fully set forth herein, except that: (i) each reference in such incorporated sections to "Lease" shall be deemed a reference to "Sublease"; (ii) each reference to the "Premises" shall be deemed a reference to the "Subleased Premises"; (iii) each reference to "Landlord" and "Tenant" shall be deemed a reference to "Sublessor" and "Sublessee", respectively, except as otherwise expressly set forth herein; (iv) with respect to work, services, repairs, restoration, insurance, indemnities, representations,

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

warranties or the performance of any other obligation of Master Lessor under the Master Lease, the sole obligation of Sublessor shall be to request the same in writing from Master Lessor as and when requested to do so by Sublessee, and to use Sublessor's reasonable efforts (without requiring Sublessor to spend more than a nominal sum) to obtain Master Lessor's performance; (v) with respect to any obligation of Sublessee to be performed under this Sublease, wherever the Master Lease grants to Sublessor a specified number of days to perform its obligations under the Master Lease, except as otherwise provided herein, Sublessee shall have three (3) fewer days to perform the obligation, including, without limitation, curing any defaults; (vi) with respect to any approval required to be obtained from the "Landlord" under the Master Lease, such consent must be obtained from both Master Lessor and Sublessor, and the approval of Sublessor may be withheld if Master Lessor's consent is not obtained; (vii) in any case where the "Landlord" reserves or is granted the right to manage, supervise, control, repair, alter, regulate the use of, enter or use the Premises or any areas beneath, above or adjacent thereto, perform any actions or cure any failures, such reservation or grant of right of entry shall be deemed to be for the benefit of both Master Lessor and Sublessor; (viii) in any case where "Tenant" is to indemnify, release or waive claims against "Landlord", such indemnity, release or waiver shall be deemed to run from Sublessee to both Master Lessor and Sublessor; (ix) in any case where "Tenant" is to execute and deliver certain documents or notices to "Landlord", such obligation shall be deemed to run from Sublessee to both Master Lessor and Sublessor; (x) all payments shall be made to Sublessor; (xi) Sublessee shall pay all consent and review fees set forth in the Master Lease to both Master Lessor and Sublessor; (xii) Sublessee shall not have the right to terminate this Sublease due to casualty or condemnation unless Sublessor has such right under the Master Lease; and (xiii) all "excess" under subleases and assignments shall be paid to Sublessor.

Notwithstanding the foregoing, (a) the following provisions of the Master Lease shall not be incorporated herein: Preamble, Section 2 (except sub-section g.), Section 3, Section 4, Section 6, Section 7 (except sub-sections d., e. and h.), Section 8.c. (second paragraph only), Section 9.a. (third sentence only), Section 13.g., Section 17.d., Section 17.e. (second paragraph only), Section 21 (second paragraph only), Section 28 (first sentence only), Section 34, Section 51, Section 53, Section 54, Section 55, Exhibit C, Exhibit D, Exhibit D-1, Exhibit F, First Amendment and Second Amendment; and (b) references in the following provisions to "Landlord" shall mean Master Lessor only: Section 8.b. (second paragraph only), Section 10.b. and Section 17.a.

B.    Assumption of Obligations.  This Sublease is and at all times shall be subject and subordinate to the Master Lease and the rights of Master Lessor thereunder.  Sublessee hereby expressly assumes and agrees: (i) to comply with all provisions of the Master Lease which are incorporated hereunder; and (ii) to perform all the obligations on the part of the "Tenant" to be performed under the terms of the Master Lease during the Term of this Sublease which are incorporated hereunder.  In the event the Master Lease is terminated for any reason whatsoever, this Sublease shall terminate simultaneously with such termination without any liability of Sublessor to Sublessee.  In the event of a conflict between the provisions of this Sublease and the Master Lease, as between Sublessor and Sublessee, the provisions of this Sublease shall control.  In the event of a conflict between the express provisions of this Sublease and the provisions of the Master Lease, as incorporated herein, the express provisions of this Sublease shall prevail.

23.    Conditions Precedent:  This Sublease and Sublessor's and Sublessee's obligations hereunder are conditioned upon the written consent of Master Lessor.  If Sublessor fails to obtain Master Lessor's consent within thirty (30) days after execution of this Sublease by Sublessor, then Sublessor or Sublessee may terminate this Sublease by giving the other party written notice thereof, and Sublessor

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-7-

shall return to Sublessee its payment of the first month's Rent paid by Sublessee pursuant to Paragraph 4 hereof and the Security Deposit.

24.     Authority to Execute:  Sublessee and Sublessor each represent and warrant to the other that each person executing this Sublease on behalf of each party is duly authorized to execute and deliver this Sublease on behalf of that party.

25. Termination; Recapture:  Notwithstanding anything to the contrary herein, Sublessee acknowledges that, under the Master Lease, both Master Lessor and Sublessor have certain termination and recapture rights, including, without limitation, in Sections 13.d, 26, 27.a.  Nothing herein shall prohibit Master Lessor or Sublessor from exercising any such termination or recapture rights, and neither Master Lessor nor Sublessor shall have any liability to Sublessee as a result thereof.  In the event Master Lessor or Sublessor exercise any such termination or recapture rights, this Sublease shall terminate without any liability to Master Lessor or Sublessor.

26.     Inducement Recapture:  Any agreement for free or abated rent or other charges, or for the giving or paying by Sublessor to or for Sublessee of any cash or other bonus, inducement or consideration for Sublessee's entering into this Sublease, all of which concessions are hereinafter referred to as "Inducement Provisions", shall be deemed conditioned upon Sublessee's full and faithful performance of all of the terms, covenants and conditions of this Sublease.  Upon a default by Sublessee beyond applicable notice and cure periods, any such Inducement Provision shall automatically be deemed deleted from this Sublease and no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Sublessor under such an Inducement Provision shall be immediately due and payable by Sublessee to Sublessor, notwithstanding any subsequent cure of said default by Sublessee.

27. Furniture, Fixtures and Equipment:  Sublessee shall have the right to use during the Term the office furnishings within the Subleased Premises which are identified on Exhibit C attached hereto at no additional cost to Sublessee.  The Furniture is provided in its "AS IS, WHERE IS" condition, without representation or warranty whatsoever.  Sublessee shall insure the Furniture under the property insurance policy required under the Master Lease, as incorporated herein, and shall pay all taxes with respect to the Furniture.  Sublessee shall maintain the Furniture in good condition and repair, reasonable wear and tear excepted, and shall be responsible for any loss or damage to the same occurring during the Term.  Sublessee shall surrender the Furniture to Sublessor upon the termination of this Sublease in the same condition as exists as of the Commencement Date, reasonable wear and tear excepted.  Sublessee shall not remove any of the Furniture from the Subleased Premises, except for purposes of replacing any broken or obsolete Furniture. Notwithstanding the foregoing, provided (i) Sublessee has not defaulted under this Sublease and no event has occurred that with the passing of time or the giving of notice, would constitute a default by Sublessee under this Sublease and (ii) this Sublease has not terminated prior to the Expiration Date, which conditions may be waived by Sublessor in its sole discretion, then upon the termination of this Sublease, the Furniture shall become the property of Sublessee, and Sublessee shall accept the same in its "AS IS, WHERE IS" condition, without representation or warranty whatsoever.

[Signatures on following page]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-8-

-9-

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first above written.

SUBLESSOR:

**ROCKET FUEL INC.,**
a Delaware corporation

By: _____
Name: STEPHEN SNYDER
Title: CFO

Address:
Rocket Fuel Inc.
1900 Seaport Boulevard
Chicago, Illinois 60654
Attention:   CEO
Director of Real Estate & Facilities

With a copy to:

Rocket Fuel Inc.
1900 Seaport Boulevard
Chicago, Illinois 60601
Attention:  Office of the General Counsel

SUBLESSEE:

**NITEL INC.,**
an Illinois corporation

By: *Paul Rios*
    _____
Name: Paul Rios
Title: General Counsel

Address:
Nitel, Inc.
1101 W. Lake Street
Chicago, IL 60607
Attention: Ron Grason

With a copy to:

Nitel Inc.
1101 W. Lake St.
Chicago, IL 60607
Attention: General Counsel

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

## EXHIBIT A

## MASTER LEASE

[To be attached]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N  Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-10-

# EXHIBIT B

## SUBLEASED PREMISES



C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-11-

-12-

**EXHIBIT C**

**FURNITURE**

[To be attached]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N  Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx