**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| SIZMEK INC., *et al*,[1] | Case No. 19-10971 (DSJ) |
| Debtors. | (Joint Administered) |
| NITEL, INC., | Adv. Proc. No. 21-01160-dsj |
| Plaintiff, | |
| v. | |
| CERBERUS BUSINESS FINANCE, LLC, and PEPI CAPITAL, L.P., | |
| Defendants. | |

### CERTIFICATE OF SERVICE
### OF SUMMONS AND NOTICE OF PRE-TRIAL CONFERENCE AND COMPLAINT
### WITH EXHIBITS
### [RELATED TO DOC 1 AND 5]

The undersigned hereby certifies that on June 11, 2021, a copy of the *Summons and Notice of Pre-Trial Conference* [Doc. No. 5] (the "Summons"), issued the same date and attached hereto, along with a copy of the *Complaint* [Doc No. 1] (the "Complaint"), with all Exhibits, filed by Creditor, Nitel, Inc. was served by U.S. Regular Mail, postage prepaid, upon PEPI Capital, L.P. at the regular mail address listed below:

PEPI Capital, L.P.
C/O Corporation Trust Company, its registered agent
Attn: Officer, Managing Agent, or General Agent
CORPORATION TRUST CENTER
1209 Orange St
Wilmington, DE 19801

---

Dated: June 11, 2021                     ICE MILLER LLP


                                         */s/ Jason M. Torf*
                                         Jason M Torf (pro hac vice pending)
                                         200 W. Madison Street, Suite 3500
                                         Chicago, IL 60606
                                         Telephone: (312) 726-6244
                                         Fax: (312) 726-6214
                                         Email: Jason.Torf@icemiller.com

                                         John C. Cannizzaro (pro hac vice pending)
                                         250 West Street, Suite 700
                                         Columbus, OH 43215
                                         Telephone: (614) 462-1070
                                         Fax: (614) 232-6923
                                         Email: John.Cannizzaro@icemiller.com

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re: Sizmek Inc.

Bankruptcy Case No.: 19−10971−dsj

Nitel, Inc.

Plaintiff(s),

−against−

Adversary Proceeding No. 21−01160−dsj

Cerberus Business Finance, LLC
PEPI CAPITAL, L.P.

Defendant(s)

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

| Address of Clerk: |
|---|
| Clerk of the Court<br>United States Bankruptcy Court<br>Southern District of New York<br>One Bowling Green<br>New York, NY 10004−1408 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney: |
|---|
| Jason M. Torf<br>Ice Miller LLP<br>200 W. Madison Street<br>Suite 3500<br>Chicago, IL 60606 |

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| United States Bankruptcy Court<br>Southern District of New York<br>One Bowling Green<br>New York, NY 10004−1408 | Room: Register at www.court−solutions.com, Dial: (646)760−4600 five mins before hrg, DSJ Teleconference Line<br><br>Date and Time: 7/29/21 at 10:00 AM |
|---|---|

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: 6/11/21

Vito Genna

*Clerk of the Court*

By: /s/ Carmen Ortiz

*Deputy Clerk*

Jason M. Torf
**ICE MILLER LLP**
200 W. Madison Street, Suite 3500
Chicago, IL 60606
Telephone: (312) 726-6244
Fax: (312) 726-6214

John C. Cannizzaro
**ICE MILLER LLP**
250 West Street, Suite 700
Columbus, OH 43215
Telephone: (614) 462-1070
Fax: (614) 232-6923

*Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SIZMEK INC., *et al*,[1]<br><br>               Debtors. | Chapter 7<br><br>Case No. 19-10971 (DSJ)<br><br>(Joint Administered) |
| NITEL, INC.,<br><br>               Plaintiff,<br>v.<br><br>CERBERUS BUSINESS FINANCE, LLC, and<br>PEPI CAPITAL, L.P.,<br><br>               Defendants. | Adv. Proc. No. _____ |

## **COMPLAINT**

Plaintiff Nitel, Inc. ("Nitel"), by and through its undersigned counsel, for its complaint

against defendant Cerberus Business Finance, LLC ("Cerberus") and PEPI Capital, L.P. ("PEPI

Capital", and together with Cerberus, the "Secured Lenders"), hereby alleges as follows:

---

[1] Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sizmek Inc. (4624); Point Roll, Inc. (3173); Sizmek DSP, Inc. (2319); Sizmek Technologies, Inc. (6402); Wireless Artist LLC (0302); Wireless Developer, Inc. (9686); X Plus One Solutions, Inc. (8106); and X Plus Two Solutions, LLC (4914).

## PARTIES

1.      Nitel is an Illinois corporation headquartered in Chicago, Illinois.

2.      Cerberus is a Delaware limited liability company headquartered in New York, New York.

3.      PEPI Capital is a Delaware limited partnership headquartered in Dallas, Texas.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated February 1, 2012.

5.      Plaintiff consents, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, to the entry of a final order by the Bankruptcy Court in connection with this adversary proceeding to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7.      Nitel was the sublessee of approximately 32,115 rentable square feet of space located on the 13th Floor, described as Suite 1300N or Suite 1300, of 350 North Orleans Street, Chicago, Illinois (the "Subleased Premises") pursuant to a sublease (the "Sublease") between Nitel and Sizmek DSP, Inc. ("Debtor"), as successor-in-interest to Rocket Fuel Inc. ("Rocket Fuel").  A true and correct copy of the Sublease is attached hereto as **Exhibit A**.

8.      BRE River North Point Owner LLC (the "Master Landlord"), as successor-in-interest to SRI Ten West Mart LLC, was the landlord for the Subleased Premises pursuant to a

lease dated February 19, 2014, as amended, between Master Landlord and Debtor, as successor-in-interest to Rocket Fuel (the "Master Lease").

9.      Debtor, as successor-in-interest to Rocket Fuel, Master Landlord, and Nitel are parties to a Landlord Consent to Sublease dated December 19, 2016 (the "Consent", and together with the Sublease and all documents relating or pertaining to Nitel's occupancy of the Subleased Premises, whether or not attached hereto, the "Sublease Documents"), which addresses the parties' rights with respect to the Sublease and the Master Lease. A true and correct copy of the Consent is attached hereto as **Exhibit B**.

10.     Pursuant to the terms of the Sublease, Nitel provided to Rocket Fuel, Debtor's predecessor-in-interest, a security deposit in the amount of $271,092.87 (the "Security Deposit"). The Security Deposit was subsequently transferred to Debtor to hold for Nitel's benefit as required by the terms of the Sublease and applicable Illinois law.

11.     Cerberus is purportedly the administrative agent and collateral agent for itself and PEPI Capital under a Financing Agreement dated September 6, 2017, for certain revolving and term loans that were purportedly secured by first-priority liens on substantially all the Debtor's assets.

12.     On or about March 25, 2019, the Secured Lenders swept all cash from the Debtor's accounts. *See* Declaration of Sascha Wittler, Chief Financial Officer of Sizmek Inc., (I) In Support of Chapter 11 Petitions and (II) Pursuant to Local Rule 1007-2 (Doc. No. 13, Case No. 19-10971).

13.     Upon information and belief, when the Secured Lenders swept the Debtor's accounts, they caused some or all of the Security Deposit to be transferred from the Debtor to the Secured Lenders.

4822-0191-0498.5

14. On March 29, 2019 (the "Petition Date"), the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

15. Pursuant to the Sixth Notice of Rejection of Certain Executory Contracts and Unexpired Leases (Doc. 287), Debtor rejected the Lease and Sublease effective June 27, 2019.

16. Under applicable Illinois law, the Security Deposit was held in trust by the Debtor for the benefit of Nitel.

17. Because the Security Deposit was held in trust, it was not the Debtor's property, not subject to any security interest asserted against Debtor's property, and not the Secured Lenders' collateral.

**COUNT I: CONVERSION**

18. Plaintiff incorporates by reference paragraphs 1 through 17 of this Complaint as though fully set forth below.

19. When the Secured Lenders swept the Debtor's accounts, they wrongfully and without authorization took control over the Security Deposit.

20. Nitel has rights in the Security Deposit by virtue of its rights under the Sublease Documents.

21. Nitel has an immediate right to possession of the Security Deposit under the Sublease Documents and applicable Illinois law.

22. On or about December 2019, Nitel demanded the return of the Security Deposit from Debtor. At that time, Debtor indicated that the Secured Lenders were in possession of the Security Deposit, having swept the account in which the Security Deposit was held.

23. On March 29, 2021, Nitel demanded the return of the Security Deposit from the Secured Lenders. A true and correct copy of Nitel's demand letter is attached hereto and

incorporated herein as **Exhibit C**.  As of the date of this Complaint, Secured Lenders have failed to return the Security Deposit to Nitel.

24.     By virtue of the above, the Secured Lenders have converted Nitel's Security Deposit, and as a direct and proximate result of such conversion, caused damages to Nitel in the sum of $271,092.87 plus attorney's fees and costs incurred in seeking the return of the Security Deposit.

## COUNT II:  UNJUST ENRICHMENT

25.     Plaintiff incorporates by reference paragraphs 1 through 24 of this Complaint as though fully set forth below.

26.     When the Secured Lenders swept the Debtor's accounts, they took possession, custody, and control of the Security Deposit, which was not Debtor's property and was not the Secured Lenders' collateral.

27.     The Secured Lenders' seizure of the Security Deposit was to Nitel's detriment because such seizure prevented Nitel from recovering the Security Deposit from the Debtor as was its right.

28.     Permitting the Secured Lenders to retain possession of the Security Deposit would be a windfall to the Secured Lenders and violates fundamental principles of justice, equity, and good conscience.

29.     To remedy such unjust enrichment, the Secured Lenders should be required to immediately turnover the entire $271,092.87 Security Deposit to Nitel.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court grant Nitel the following relief:

a.     Damages for the Secured Lenders' conversion and/or unjust enrichment in the amount of $271,092.87;

b.      Nitel's reasonable attorney's fees, costs, and expenses incurred in seeking a return of the Security Deposit;

c.      Pre- and post-judgment interest as permitted by law; and

d.      Such other relief as the Court deems just and proper.

**ICE MILLER LLP**

*/s/ Jason M. Torf*
Jason M. Torf (pro hac vice pending)
200 W. Madison Street, Suite 3500
Chicago, IL 60606
Telephone: (312) 726-6244
Fax: (312) 726-6214
Email: Jason.Torf@icemiller.com

John C. Cannizzaro (pro hac vice pending)
250 West Street, Suite 700
Columbus, OH 43215
Telephone: (614) 462-1070
Fax: (614) 232-6923
Email: John.Cannizzaro@icemiller.com

# SUBLEASE

THIS SUBLEASE (this "Sublease") is dated for reference purposes as of November __, 2016 (the "Effective Date"), and is made by and between ROCKET FUEL INC., a Delaware corporation ("Sublessor"), and NITEL, INC., an Illinois corporation ("Sublessee"). Sublessor and Sublessee hereby agree as follows:

1.     Recitals: This Sublease is made with reference to the fact that BRE RIVER NORTH POINT OWNER LLC ("Master Lessor") successor-in-interest to SRI TEN WEST MART LLC, as landlord, and Sublessor, as tenant, entered into that certain lease, dated as of February 19, 2014, as amended by that certain First Amendment to Lease dated April 4, 2014 (the "First Amendment"), as further amended by that certain Section Amendment to Lease dated June 21, 2016 (the "Second Amendment"), (collectively, the "Master Lease"), with respect to premises consisting of approximately 44,590 square feet of space, located on the 13th Floor at 350 North Orleans Street, Chicago, Illinois (the "Premises"). A copy of the Master Lease is attached hereto as Exhibit A.

2.     Premises: Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, a portion of the Premises consisting of approximately 32,115 rentable square feet of space located on the 13th Floor, described as Suite 1300N or Suite 1300 (hereinafter, the "Subleased Premises"). The Subleased Premises are more particularly described on Exhibit B attached hereto.

3.     Term:

A.   Term. The term (the "Term") of this Sublease shall be for the period commencing on the later of (i) January 1, 2017 or (ii) thirty (30) days after Sublessor delivers possession of the Subleased Premises to Sublessee with the Furniture (defined below) (the "Commencement Date") and ending on June 30, 2021 (the "Expiration Date"), unless this Sublease is sooner terminated pursuant to its terms or the Master Lease is sooner terminated pursuant to its terms; provided, however, if Sublessee elects to occupy the Subleased Premises for the conduct of business during such early access period, then the Commencement Date shall occur upon such occupancy. If requested by either Sublessor, Sublessee or Master Lessor, the Sublessor and Sublessee shall memorialize in writing the Commencement Date.

Provided that the Master Lessor's consent to this Sublease has been obtained, Sublessor shall permit Sublessee to access the Subleased Premises for thirty (30) days prior to the Commencement Date, such occupancy shall be subject to all of the provisions of this Sublease, except for the obligation to pay Base Rent (as defined below). Any such early access shall be solely for the purpose of preparing the Subleased Premises for occupancy and not for the purpose of conducting business therein, and shall only be provided if the following conditions are met (i) Master Lessor's consent to this Sublease has been received, (ii) Sublessee has delivered to Sublessor the Security Deposit and first month's Base Rent as required under Paragraph 4 and (iii) Sublessee has delivered to Sublessor evidence of all insurance required under this Sublease.

B.   No Option to Extend. The parties hereby acknowledge that the expiration date of the Master Lease is June 30, 2021 and that Sublessee has no option to extend the Term of this Sublease.

4.     Rent:

A.   Base Rent. Sublessee shall pay to Sublessor base rent for the Subleased Premises in accordance with the following schedule ("Base Rent"):

8037325_2

| Period | Monthly Base Rent |
|---|---|
| Commencement Date – Month 12 | $80,287.50 |
| Month 13 – Month 24 | $82,696.13 |
| Month 25 – Month 36 | $85,177.01 |
| Month 37 – Month 48 | $87,732.32 |
| Month 49 – June 30, 2021 | $90,364.29 |

Base Rent and Additional Rent, as defined in Paragraph 4.B below, shall be paid on or before the first (1st) day of each month. Base Rent and Additional Rent for any period during the Term hereof which is for less than one (1) month of the Term shall be a pro rata portion of the monthly installment based on a thirty (30) day month. If an increase in Base Rent becomes effective on a date other than the first day of a calendar month, the Base Rent for that month shall be the sum of the two applicable rates, each prorated for the portion of the month during which the rate is in effect. Base Rent and Additional Rent shall be payable without notice or demand and without any deduction, offset, or abatement, in lawful money of the United States of America. Base Rent and Additional Rent shall be paid directly to Sublessor at 1900 Seaport Boulevard, Redwood City, California 94063 Attention: Accounts Receivable or such other address as may be designated in writing by Sublessor.

        A.    __Additional Rent__. All monies other than Base Rent required to be paid by Sublessor under the Master Lease as to the Subleased Premises, including, without limitation, any amounts payable by Sublessor to Master Lessor as "Operating Expenses" and "Tax Expenses" (as defined in Section 7 of the Master Lease) as well as additional utilities and services, shall be paid by Sublessee hereunder as and when such amounts are due under the Master Lease, as incorporated herein, provided however Sublessee's Base Year shall be the Calendar Year 2017 and Sublessee shall be responsible for 72% ("Sublessee's Proportionate Share") of Operating Expenses and Tax Expenses charged under the Master Lease in excess of the 2017 Base Year. All such amounts shall be deemed additional rent ("Additional Rent"). Base Rent and Additional Rent hereinafter collectively shall be referred to as "Rent". Subject to the foregoing, Sublessee and Sublessor agree, as a material part of the consideration given by Sublessee to Sublessor for this Sublease, that Sublessee shall pay all costs, expenses, taxes, insurance, maintenance and other charges of every kind and nature arising in connection with this Sublease, the Master Lease as to the Subleased Premises or the Subleased Premises, such that Sublessor shall receive, as a net consideration for this Sublease, the Base Rent payable under Paragraph 4.A. hereof. Notwithstanding the foregoing, in the event any cost or expense is incurred under the Master Lease or under this Sublease for Sublessee's sole benefit (including the disproportionate use of utilities) or as a result of Sublessee's request for certain services (such as after-hours HVAC charges, which may be incurred for the entire Premises if requested by Sublessee for the Subleased Premises) or the provision of services to the Subleased Premises, Sublessee shall pay the entire cost thereof. In addition, (i) Sublessee shall reimburse Sublessor for "Sublessee's Proportionate Share" of any janitorial services provided by Sublessor to the Subleased Premises and (ii) Sublessor shall provide Sublessee

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-2-

either monthly or quarterly invoices reflecting Sublessee's Proportionate Share of electrical costs with respect to the Premises, and such invoice will contain copies of the applicable monthly electrical bills from the utility company.

        B. <u>Payment of First Month's Rent</u>. Upon execution hereof by Sublessee and consent by Master Lessor to this Sublease, Sublessee shall pay to Sublessor the sum of Eighty Thousand Two Hundred Eighty-Seven and 50/100 Dollars ($80,287.50), which shall constitute Base Rent for the first month of the Term.

        C. <u>Base Rent Abatement</u>. Provided Sublessee is not then in default under this Sublease, Base Rent shall be abated for Month 1 of the Term.

    5. <u>Late Charge</u>: If Sublessee fails to pay to Sublessor any amount due hereunder when due, Sublessee shall pay Sublessor upon demand a late charge as set forth in Section 31 of the Master Lease, as incorporated herein.

    6. <u>Security Deposit</u>: Upon execution hereof by Sublessee and consent by Master Lessor to this Sublease, Sublessee shall deposit with Sublessor the sum of Two Hundred Seventy-One Thousand Ninety-Two and 87/100 Dollars ($271,092.87) (the "Security Deposit"), in cash, as security for the performance by Sublessee of the terms and conditions of this Sublease. If Sublessee fails to pay Rent or other charges due hereunder or otherwise defaults with respect to any provision of this Sublease, then Sublessor may draw upon, use, apply or retain all or any portion of the Security Deposit for the payment of any Rent or other charge in default, for the payment of any other sum which Sublessor has become obligated to pay by reason of Sublessee's default, or to compensate Sublessor for any loss or damage which Sublessor has suffered thereby. If Sublessor so uses or applies all or any portion of the Security Deposit, then Sublessee, within ten (10) days after demand therefor, shall deposit cash with Sublessor in the amount required to restore the Security Deposit to the full amount stated above. No later than thirty (30) days after the expiration of this Sublease, if Sublessee is not in default, Sublessor shall return to Sublessee so much of the Security Deposit as has not been applied by Sublessor pursuant to this paragraph, or which is not otherwise required to cure Sublessee's defaults.

    7. <u>Holdover</u>: The parties hereby acknowledge that the expiration date of the Master Lease is June 30, 2021 and that it is therefore critical that Sublessee surrender the Subleased Premises to Sublessor no later than the Expiration Date in accordance with the terms of this Sublease. In the event that Sublessee does not surrender the Subleased Premises by the Expiration Date in accordance with the terms of this Sublease, Sublessee shall indemnify, defend, protect and hold harmless Sublessor from and against all loss and liability resulting from Sublessee's delay in surrendering the Subleased Premises and pay Sublessor holdover rent as provided in Sections 20.b. and 20.c. of the Master Lease as to the entire Premises.

    8. <u>Repairs</u>: Sublessor shall deliver the Subleased Premises to Sublessee in "broom clean" condition. The parties acknowledge and agree that Sublessee is subleasing the Subleased Premises on an "as is" basis, and that Sublessor has made no representations or warranties with respect to the condition of the Subleased Premises. Sublessor shall have no obligation whatsoever to make or pay the cost of any alterations, improvements or repairs to the Subleased Premises, including, without limitation, any improvement or repair required to comply with any law, regulation, building code or ordinance (including the Americans with Disabilities Act of 1990). Master Lessor shall be solely responsible for

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-3-

performance of any repairs required to be performed by Master Lessor under the terms of the Master Lease.

9.  Indemnity:  Except to the extent caused by the negligence or willful misconduct of Sublessor, its agents, employees, contractors or invitees, Sublessee shall indemnify, defend with counsel reasonably acceptable to Sublessor, protect and hold Sublessor harmless from and against any and all losses, claims, liabilities, judgments, causes of action, damages, costs and expenses (including reasonable attorneys' and experts' fees), caused by or arising in connection with: (i) the use, occupancy or condition of the Subleased Premises by Sublessee; (ii) the negligence or willful misconduct of Sublessee or its employees, contractors, agents or invitees; or (iii) a breach of Sublessee's obligations under this Sublease or the provisions of the Master Lease assumed by Sublessee hereunder.  Sublessee's indemnification of Sublessor shall survive termination of this Sublease.

10.  Right to Cure Defaults:  If Sublessee fails to pay any sum of money under this Sublease, or fails to perform any other act on its part to be performed hereunder, then Sublessor may, but shall not be obligated to, after passage of any applicable notice and cure periods, make such payment or perform such act.  All such sums paid, and all reasonable costs and expenses of performing any such act, shall be deemed Additional Rent payable by Sublessee to Sublessor upon demand, together with interest thereon at the Interest Rate from the date of the expenditure until repaid.

11.  Assignment and Subletting.  Sublessee may not assign this Sublease, sublet the Subleased Premises, transfer any interest of Sublessee therein or permit any use of the Subleased Premises by another party (collectively, "Transfer"), without the prior written consent of Sublessor, which consent shall not be unreasonably withheld, conditioned or delayed (provided however, it shall be deemed reasonable for Sublessor to withhold its consent if Master Lessor withholds consent), and Master Lessor.  A consent to one Transfer shall not be deemed to be a consent to any subsequent Transfer.  Any Transfer without such consent shall be void and, at the option of Sublessor, shall terminate this Sublease.  Sublessor's waiver or consent to any assignment or subletting shall be ineffective unless set forth in writing, and Sublessee shall not be relieved from any of its obligations under this Sublease unless the consent expressly so provides.  Any Transfer shall be subject to the terms of Section 13 of the Master Lease.

12.  Use:

A.  Sublessee may use the Subleased Premises only for the uses identified in Section 8 of the Master Lease.  Sublessee shall indemnify, defend with counsel reasonably acceptable to Sublessor and hold Sublessor harmless from and against all claims, actions, suits, proceedings, judgements, losses, costs, personal injuries, damages, liabilities, deficiencies, fines, penalties, damages, attorneys' fees, consultants' fees, investigations, detoxifications, remediations, removals, and expenses of every type and nature, to the extent caused by the release, disposal, discharge or emission of hazardous materials on or about the Subleased Premises during the Term of this Sublease by Sublessee or its agents, contractors, invitees or employees.

B.  Sublessee shall not do or permit anything to be done in or about the Subleased Premises which would (i) injure the Subleased Premises; or (ii) vibrate, shake, overload, or impair the efficient operation of the Subleased Premises or the sprinkler systems, heating, ventilating or air conditioning equipment, or utilities systems located therein.  Sublessee shall not store any materials, supplies, finished or unfinished products or articles of any nature outside of the Subleased Premises.  For

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-4-

purposes of this Sublease and Sections 8.a. and 8.c. of the Master Lease, Sublessee shall comply with all reasonable rules and regulations promulgated from time to time by Sublessor and Master Lessor. Unless Sublessee engages directly with the service provider, Sublessor shall provide Sublessee with access cards to the Subleased Premises and to the Building for each employee at a cost of $20 per card. All such access cards must be returned to Sublessor upon the earlier of such employee's termination or the expiration of the Term.

13.     Effect of Conveyance: As used in this Sublease, the term "Sublessor" means the holder of the tenant's interest under the Master Lease. In the event of any assignment, transfer or termination of the tenant's interest under the Master Lease, which assignment, transfer or termination may occur at any time during the Term hereof in Sublessor's sole discretion, Sublessor shall be and hereby is entirely relieved of all covenants and obligations of Sublessor hereunder, and it shall be deemed and construed, without further agreement between the parties, that any transferee has assumed and shall carry out all covenants and obligations thereafter to be performed by Sublessor hereunder. Sublessor may transfer and deliver any security of Sublessee to the transferee of the tenant's interest under the Master Lease, and thereupon Sublessor shall be discharged from any further liability with respect thereto.

14.     Delivery and Acceptance: If Sublessor fails to deliver possession of the Subleased Premises to Sublessee for any reason whatsoever, then this Sublease shall not be void or voidable, nor shall Sublessor be liable to Sublessee for any loss or damage; provided, however, that in such event, Rent shall abate until Sublessor delivers possession of the Subleased Premises to Sublessee. By taking possession of the Subleased Premises, Sublessee conclusively shall be deemed to have accepted the Subleased Premises in their as-is, then-existing condition, without any warranty whatsoever of Sublessor with respect thereto. Sublessor agrees that if the Commencement Date does not occur on or before February 1, 2017 for any reason other than Force Majeure (as defined in Section 17(e) of the Master Lease, as incorporated herein), Sublessee shall receive one (1) day of abated Base Rent for each day of the period commencing on February 1, 2017 and ending on the Commencement Date (the "Rent Penalty"). In the event that the Commencement Date does not occur on or before April 1, 2017 for any reason other than Force Majeure, then Sublessee may, at its option, by written notice to Sublessor delivered no later than April 10, 2017, terminate this Sublease and the Base Rent and Security Deposit paid to Sublessor shall be immediately returned to Sublessee. If Sublessee fails to deliver a termination notice as aforesaid, then the Rent Penalty shall stop accruing as of April 1, 2017.

15.     Improvements: No alteration or improvements shall be made to the Subleased Premises, except in accordance with the Master Lease, and with the prior written consent of both Sublessor, whose consent shall not be unreasonably withheld, conditioned or delayed (provided however, it shall be deemed reasonable for Sublessor to withhold its consent if Master Lessor withholds consent), and Master Lessor.

16.     Insurance: Sublessee shall obtain and keep in full force and effect, at Sublessee's sole cost and expense, during the Term the insurance required under Section 15 of the Master Lease. Sublessee shall name Master Lessor and Sublessor as additional insureds under its liability insurance policy. The release and waiver of subrogation set forth in Section 16 of the Master Lease, as incorporated herein, shall be binding on the parties.

17.     Default; Remedies: Sublessee shall be in material default of its obligations under this Sublease upon the occurrence of any of the events set forth in Section 25.a. of the Master Lease, as incorporated herein, and by applicable law. In the event of any default by Sublessee, Sublessor shall

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-5-

have all remedies provided pursuant to Section 25.b. of the Master Lease and by applicable law. Sublessor may resort to its remedies cumulatively or in the alternative.

18.    Surrender:  Prior to expiration of this Sublease, Sublessee shall remove all of its personal property and trade fixtures as well as all wiring and cabling, and shall surrender the Subleased Premises to Sublessor in good condition, free of hazardous materials caused by Sublessee, reasonable wear and tear, casualty and condemnation excepted. If the Subleased Premises are not so surrendered, then Sublessee shall be liable to Sublessor for all costs incurred by Sublessor in returning the Subleased Premises to the required condition, plus interest thereon at the Interest Rate.

19.    Broker:  Sublessor and Sublessee each represent to the other that they have dealt with no real estate brokers, finders, agents or salesmen other than Newmark Grubb Knight Frank, representing Sublessor, and CBRE, representing Sublessee, in connection with this transaction. Each party agrees to hold the other party harmless from and against all claims for brokerage commissions, finder's fees or other compensation made by any other agent, broker, salesman or finder as a consequence of such party's actions or dealings with such agent, broker, salesman, or finder.

20.    Notices:  Unless at least five (5) days' prior written notice is given in the manner set forth in this paragraph, the address of each party for all purposes connected with this Sublease shall be that address set forth below its signature at the end of this Sublease.  All notices, demands or communications in connection with this Sublease shall be (a) personally delivered; or (b) properly addressed and (i) submitted to an overnight courier service, charges prepaid, or (ii) deposited in the mail (certified, return receipt requested, and postage prepaid).  Notices shall be deemed delivered upon receipt, if personally delivered, one (1) business day after being submitted to an overnight courier service and three (3) business days after mailing, if mailed as set forth above. All notices given to Master Lessor under the Master Lease shall be considered received only when delivered in accordance with the Master Lease.

21.    Miscellaneous:  This Sublease shall in all respects be governed by and construed in accordance with the laws of the State of Illinois.  If any term of this Sublease is held to be invalid or unenforceable by any court of competent jurisdiction, then the remainder of this Sublease shall remain in full force and effect to the fullest extent possible under the law, and shall not be affected or impaired. This Sublease may not be amended except by the written agreement of all parties hereto.  If either party brings any action or legal proceeding with respect to this Sublease, the prevailing party shall be entitled to recover reasonable attorneys' fees, experts' fees, and court costs.  If either party becomes the subject of any bankruptcy or insolvency proceeding, then the other party shall be entitled to recover all attorneys' fees, experts' fees, and other costs incurred by that party in protecting its rights hereunder and in obtaining any other relief as a consequence of such proceeding.

22.    Other Sublease Terms:

A.    Incorporation By Reference.  Except as set forth below, the terms and conditions of this Sublease shall include all of the terms of the Master Lease and such terms are incorporated into this Sublease as if fully set forth herein, except that: (i) each reference in such incorporated sections to "Lease" shall be deemed a reference to "Sublease"; (ii) each reference to the "Premises" shall be deemed a reference to the "Subleased Premises"; (iii) each reference to "Landlord" and "Tenant" shall be deemed a reference to "Sublessor" and "Sublessee", respectively, except as otherwise expressly set forth herein; (iv) with respect to work, services, repairs, restoration, insurance, indemnities, representations,

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-6-

warranties or the performance of any other obligation of Master Lessor under the Master Lease, the sole obligation of Sublessor shall be to request the same in writing from Master Lessor as and when requested to do so by Sublessee, and to use Sublessor's reasonable efforts (without requiring Sublessor to spend more than a nominal sum) to obtain Master Lessor's performance; (v) with respect to any obligation of Sublessee to be performed under this Sublease, wherever the Master Lease grants to Sublessor a specified number of days to perform its obligations under the Master Lease, except as otherwise provided herein, Sublessee shall have three (3) fewer days to perform the obligation, including, without limitation, curing any defaults; (vi) with respect to any approval required to be obtained from the "Landlord" under the Master Lease, such consent must be obtained from both Master Lessor and Sublessor, and the approval of Sublessor may be withheld if Master Lessor's consent is not obtained; (vii) in any case where the "Landlord" reserves or is granted the right to manage, supervise, control, repair, alter, regulate the use of, enter or use the Premises or any areas beneath, above or adjacent thereto, perform any actions or cure any failures, such reservation or grant of right of entry shall be deemed to be for the benefit of both Master Lessor and Sublessor; (viii) in any case where "Tenant" is to indemnify, release or waive claims against "Landlord", such indemnity, release or waiver shall be deemed to run from Sublessee to both Master Lessor and Sublessor; (ix) in any case where "Tenant" is to execute and deliver certain documents or notices to "Landlord", such obligation shall be deemed to run from Sublessee to both Master Lessor and Sublessor; (x) all payments shall be made to Sublessor; (xi) Sublessee shall pay all consent and review fees set forth in the Master Lease to both Master Lessor and Sublessor; (xii) Sublessee shall not have the right to terminate this Sublease due to casualty or condemnation unless Sublessor has such right under the Master Lease; and (xiii) all "excess" under subleases and assignments shall be paid to Sublessor.

Notwithstanding the foregoing, (a) the following provisions of the Master Lease shall not be incorporated herein: Preamble, Section 2 (except sub-section g.), Section 3, Section 4, Section 6, Section 7 (except sub-sections d., e. and h.), Section 8.c. (second paragraph only), Section 9.a. (third sentence only), Section 13.g., Section 17.d., Section 17.e. (second paragraph only), Section 21 (second paragraph only), Section 28 (first sentence only), Section 34, Section 51, Section 53, Section 54, Section 55, Exhibit C, Exhibit D, Exhibit D-1, Exhibit F, First Amendment and Second Amendment; and (b) references in the following provisions to "Landlord" shall mean Master Lessor only: Section 8.b. (second paragraph only), Section 10.b. and Section 17.a.

B.    Assumption of Obligations.  This Sublease is and at all times shall be subject and subordinate to the Master Lease and the rights of Master Lessor thereunder.  Sublessee hereby expressly assumes and agrees: (i) to comply with all provisions of the Master Lease which are incorporated hereunder; and (ii) to perform all the obligations on the part of the "Tenant" to be performed under the terms of the Master Lease during the Term of this Sublease which are incorporated hereunder.  In the event the Master Lease is terminated for any reason whatsoever, this Sublease shall terminate simultaneously with such termination without any liability of Sublessor to Sublessee.  In the event of a conflict between the provisions of this Sublease and the Master Lease, as between Sublessor and Sublessee, the provisions of this Sublease shall control.  In the event of a conflict between the express provisions of this Sublease and the provisions of the Master Lease, as incorporated herein, the express provisions of this Sublease shall prevail.

23.    Conditions Precedent:  This Sublease and Sublessor's and Sublessee's obligations hereunder are conditioned upon the written consent of Master Lessor.  If Sublessor fails to obtain Master Lessor's consent within thirty (30) days after execution of this Sublease by Sublessor, then Sublessor or Sublessee may terminate this Sublease by giving the other party written notice thereof, and Sublessor

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-7-

shall return to Sublessee its payment of the first month's Rent paid by Sublessee pursuant to Paragraph 4 hereof and the Security Deposit.

    24.    <u>Authority to Execute</u>:  Sublessee and Sublessor each represent and warrant to the other that each person executing this Sublease on behalf of each party is duly authorized to execute and deliver this Sublease on behalf of that party.

    25. <u>Termination; Recapture</u>:  Notwithstanding anything to the contrary herein, Sublessee acknowledges that, under the Master Lease, both Master Lessor and Sublessor have certain termination and recapture rights, including, without limitation, in Sections 13.d, 26, 27.a.  Nothing herein shall prohibit Master Lessor or Sublessor from exercising any such termination or recapture rights, and neither Master Lessor nor Sublessor shall have any liability to Sublessee as a result thereof.  In the event Master Lessor or Sublessor exercise any such termination or recapture rights, this Sublease shall terminate without any liability to Master Lessor or Sublessor.

    26.    <u>Inducement Recapture</u>:  Any agreement for free or abated rent or other charges, or for the giving or paying by Sublessor to or for Sublessee of any cash or other bonus, inducement or consideration for Sublessee's entering into this Sublease, all of which concessions are hereinafter referred to as "Inducement Provisions", shall be deemed conditioned upon Sublessee's full and faithful performance of all of the terms, covenants and conditions of this Sublease.  Upon a default by Sublessee beyond applicable notice and cure periods, any such Inducement Provision shall automatically be deemed deleted from this Sublease and no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Sublessor under such an Inducement Provision shall be immediately due and payable by Sublessee to Sublessor, notwithstanding any subsequent cure of said default by Sublessee.

    27. <u>Furniture, Fixtures and Equipment</u>:  Sublessee shall have the right to use during the Term the office furnishings within the Subleased Premises which are identified on <u>Exhibit C</u> attached hereto at no additional cost to Sublessee.  The Furniture is provided in its "AS IS, WHERE IS" condition, without representation or warranty whatsoever.  Sublessee shall insure the Furniture under the property insurance policy required under the Master Lease, as incorporated herein, and shall pay all taxes with respect to the Furniture.  Sublessee shall maintain the Furniture in good condition and repair, reasonable wear and tear excepted, and shall be responsible for any loss or damage to the same occurring during the Term.  Sublessee shall surrender the Furniture to Sublessor upon the termination of this Sublease in the same condition as exists as of the Commencement Date, reasonable wear and tear excepted.  Sublessee shall not remove any of the Furniture from the Subleased Premises, except for purposes of replacing any broken or obsolete Furniture. Notwithstanding the foregoing, provided (i) Sublessee has not defaulted under this Sublease and no event has occurred that with the passing of time or the giving of notice, would constitute a default by Sublessee under this Sublease and (ii) this Sublease has not terminated prior to the Expiration Date, which conditions may be waived by Sublessor in its sole discretion, then upon the termination of this Sublease, the Furniture shall become the property of Sublessee, and Sublessee shall accept the same in its "AS IS, WHERE IS" condition, without representation or warranty whatsoever.

[Signatures on following page]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-8-

IN WITNESS WHEREOF, the parties have executed this Sublease as of the day and year first above written.

SUBLESSOR:

**ROCKET FUEL INC.,**
a Delaware corporation

By: _____
    Name: Stephen Sayer
    Title: CFO

Address:
Rocket Fuel Inc.
1900 Seaport Boulevard
Chicago, Illinois 60654
Attention:  CEO
Director of Real Estate & Facilities

With a copy to:

Rocket Fuel Inc.
1900 Seaport Boulevard
Chicago, Illinois 60601
Attention:  Office of the General Counsel

SUBLESSEE:

**NITEL INC.,**
an Illinois corporation

By: _____
    Name: Paul Rios
    Title: General Counsel

Address:
Nitel, Inc.
1101 W. Lake Street
Chicago, IL 60607
Attention: Ron Grason

With a copy to:

Nitel Inc.
1101 W. Lake St.
Chicago, IL 60607
Attention: General Counsel

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-9-

## EXHIBIT A

## MASTER LEASE

[To be attached]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N  Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

# EXHIBIT B

## SUBLEASED PREMISES



C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N Orleans Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-11-

## EXHIBIT C

**FURNITURE**

[To be attached]

C:\Users\prios\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\SW63NERS\Rocket Fuel Inc Sublease 350 N  Orleans
Street Chicago IL wsgr 11 28 16_(palib2_8308255_2).docx

-12-

## LANDLORD CONSENT TO SUBLEASE

**THIS LANDLORD CONSENT TO SUBLEASE** ("**Consent Agreement**") is entered into as of ___ _12·19_ ___, 2016, by and among **BRE RIVER NORTH POINT OWNER LLC, a Delaware limited liability company** ("**Landlord**"), **ROCKET FUEL INC., a Delaware corporation** ("**Sublandlord**"), and **NITEL, INC., an Illinois corporation** ("**Subtenant**").

### RECITALS:

A.   Landlord (as successor in interest to SRI Ten West Mart LLC, a Delaware limited liability company), as landlord, and Sublandlord, as tenant, are parties to that certain Office Lease dated February 19, 2014 ("**Original Lease**"), which Original Lease has been previously amended by that certain First Amendment to Lease dated April 4, 2014, by that certain Second Amendment dated June 21, 2016 and by that certain Third Amendment (the "**Third Amendment**") dated as of even date herewith (collectively, the "**Existing Lease**"). Pursuant to the Existing Lease, Landlord has leased to Sublandlord certain premises containing approximately **44,590** rentable square feet (the "**Premises**") comprised of approximately (i) 32,115 rentable square feet known as Suite No. 1300N located on the 13th floor, and (ii) 12,475 rentable square feet known as Suite No. 1350N located on the 13th floor of the building commonly known as River North Point located at 350 North Orleans Street, Chicago, Illinois 60654 (the "**Building**").

B.   Sublandlord and Subtenant have entered into that certain sublease agreement dated November ___ *[sic]*, 2016 attached hereto as **Exhibit A** (the "**Sublease**") pursuant to which Sublandlord has agreed to sublease to Subtenant certain premises described as follows: approximately **32,115** rentable square feet known as Suite No. 1300N located on the 13th floor of the Building (the "**Sublet Premises**") constituting a part of the Premises.

C.   Sublandlord and Subtenant have requested Landlord's consent to the Sublease.

D.   Landlord is willing to agree to give such consent upon the terms and conditions contained in this Consent Agreement.

**NOW THEREFORE**, in consideration of the foregoing recitals which by this reference are incorporated herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord hereby consents to the Sublease subject to the following terms and conditions, all of which are hereby acknowledged and agreed to by Sublandlord and Subtenant:

1.   Sublease Agreement and Master Lease. Sublandlord and Subtenant hereby represent that a true and complete copy of the Sublease is attached hereto and made a part hereof as **Exhibit A**, and Sublandlord and Subtenant agree that the Sublease shall not be modified without Landlord's prior written consent, which consent shall not be unreasonably withheld. Notwithstanding anything to the contrary contained in the Sublease, all parties agree that the "Master Lease", as defined in the Sublease, shall be deemed to mean the Lease, as described in Recital A above. Landlord agrees that its obligation to pay for relocation costs of Tenant pursuant to the Third Amendment shall include such relocation costs of both Tenant and Subtenant.

1.   Representations. Sublandlord hereby represents and warrants that Sublandlord (i) has full power and authority to sublease the Sublet Premises to Subtenant, (ii) has not

transferred or conveyed its interest in the Lease to any person or entity collaterally or otherwise, and (iii) has full power and authority to enter into the Sublease and this Consent Agreement. Subtenant hereby represents and warrants that Subtenant has full power and authority to enter into the Sublease and this Consent Agreement.

2. Indemnity and Insurance. Subtenant hereby assumes, with respect to Landlord, all of the indemnity and insurance obligations of the Sublandlord under the Lease with respect to the Sublet Premises, provided that the foregoing shall not be construed as relieving or releasing Sublandlord from any such obligations.

3. No Release. Nothing contained in the Sublease or this Consent Agreement shall be construed as relieving or releasing Sublandlord from any of its obligations under the Lease, it being expressly understood and agreed that Sublandlord shall remain liable for such obligations notwithstanding anything contained in the Sublease or this Consent Agreement or any subsequent assignment(s), sublease(s) or transfer(s) of the interest of the tenant under the Lease. Sublandlord shall be responsible for the collection of all rent due it from Subtenant, and for the performance of all the other terms and conditions of the Sublease, it being understood that Landlord is not a party to the Sublease and, notwithstanding anything to the contrary contained in the Sublease, is not bound by any terms, provisions, representations or warranties contained in the Sublease and is not obligated to Sublandlord or Subtenant for any of the duties and obligations contained therein.

4. Processing Costs. Landlord hereby waives the Processing Costs described in Section 13.b. of the Original Lease payable by Sublandlord in connection with this Consent Agreement and the related Sublease. This waiver in no manner shall be deemed to apply to any subsequent transfers unless such waiver is specifically agreed to by Landlord in writing at the time of such subsequent transfer.

5. No Transfer. Subtenant shall not further sublease the Sublet Premises, assign its interest as the Subtenant under the Sublease or otherwise transfer its interest in the Sublet Premises or the Sublease to any person or entity without the written consent of Landlord, which Landlord may shall not unreasonably withhold, except that Landlord's consent may be withheld in Landlord's sole and absolute discretion if the proposed assignment or subletting would result in more than 3 subleases or sub-subleases being in effect with respect to the Premises or any portion thereof at any given time (assuming for such purposes that all renewal or extension options under all subleases will be exercised). Subtenant agrees to comply with all of the provisions of the Lease, and Landlord may enforce the Lease provisions directly against Subtenant. Subtenant agrees to be and remain jointly and severally liable with Sublandlord for the payment of rent pertaining to the Sublet Premises in the amount set forth in the Sublease, and for the performance of all of the terms and provisions of the Lease applicable to the Sublet Premises.

6. Lease. The parties agree that the Sublease is subject and subordinate to the terms of the Lease, and all terms of the Lease, other than Sublandlord's obligation to pay Monthly Rent, are incorporated into the Sublease. In no event shall the Sublease or this Consent Agreement be construed as granting or conferring upon the Sublandlord or the Subtenant any greater rights than those contained in the Lease nor shall there be any diminution of the rights and privileges of the Landlord under the Lease, nor shall the Lease be deemed modified in any respect. Without limiting the scope of the preceding

2

sentence, any construction or alterations performed in or to the Sublet Premises shall be performed with Landlord's prior written approval and in accordance with the terms and conditions of the Lease. It is hereby acknowledged and agreed that any provisions in the Sublease which limit the manner in which Sublandlord may amend the Lease are binding only upon Sublandlord and Subtenant as between such parties. Landlord shall not be bound in any manner by such provisions and may rely upon Sublandlord's execution of any agreements amending or terminating the Lease subsequent to the date hereof notwithstanding any contrary provisions in the Sublease. Neither the Lease, or the Sublease or this Consent Agreement shall be deemed, to grant the Subtenant any rights whatsoever against Landlord. Subtenant hereby acknowledges and agrees that its sole remedy for any alleged or actual breach of its rights in connection with the Sublet Premises shall be solely against Sublandlord.

7.  Parking and Services. Any parking rights granted to Subtenant pursuant to the Sublease shall be satisfied out of the parking rights, if any, granted to Sublandlord under the Lease. Sublandlord hereby authorizes Subtenant, as agent for Sublandlord, to obtain services and materials for or related to the Sublet Premises, and Sublandlord agrees to pay for such services and materials as additional Rent under the Lease upon written demand from Landlord. However, as a convenience to Sublandlord, Landlord may bill Subtenant directly for such services and materials, or any portion thereof, in which event Subtenant shall pay for the services and materials so billed upon written demand, provided that such billing shall not relieve Sublandlord from its primary obligation to pay for such services and materials.

8.  Attornment. If the Lease or Sublandlord's right to possession thereunder terminates for any reason prior to the expiration of the Sublease, Subtenant agrees, at the written election of Landlord, to attorn to Landlord upon the then executory terms and conditions of the Sublease for the remainder of the term of the Sublease. In the event of any such election by Landlord, Landlord will not be (a) liable for any rent paid by Subtenant to Sublandlord more than one month in advance, or any security deposit or letter of credit paid by or delivered by Subtenant to Sublandlord, unless same has been transferred to Landlord by Sublandlord; (b) liable for any act or omission of Sublandlord under the Lease, Sublease or any other agreement between Sublandlord and Subtenant or for any default of Sublandlord under any such documents which occurred prior to the effective date of the attornment; (c) subject to any defenses or offsets that Subtenant may have against Sublandlord which arose prior to the effective date of the attornment; (d) bound by any changes or modifications made to the Sublease without the written consent of Landlord, (e) obligated in any manner with respect to the transfer, delivery, use or condition of any furniture, equipment or other personal property in the Sublet Premises which Sublandlord agreed would be transferred to Subtenant or which Sublandlord agreed could be used by the Subtenant during the term of the Sublease, or (f) liable for the payment of any improvement allowance, or any other payment, credit, offset or amount due from Sublandlord to Subtenant under the Sublease. If Landlord does not elect to have Subtenant attorn to Landlord as described above, the Sublease and all rights of Subtenant in the Sublet Premises shall terminate upon the date of termination of the Lease or Sublandlord's right to possession thereunder.  The terms of this Section 9 supercede any contrary provisions in the Sublease.

9.  Payments Under the Sublease. If at any time Sublandlord is in default under the terms of the Lease beyond the expiration of any applicable notice and cure periods, Landlord shall have the right to contact Subtenant and require Subtenant to pay all rent due under

3

the Sublease directly to Landlord until such time as Sublandlord has cured such default. Subtenant agrees to pay such sums directly to Landlord if requested by Landlord, and Sublandlord agrees that any such sums paid by Subtenant shall be deemed applied against any sums owed by Subtenant under the Sublease. Any such sums received by Landlord from Subtenant shall be received by Landlord on behalf of Sublandlord and shall be applied by Landlord to any sums past due under the Lease, in such order of priority as required under the Lease or, if the Lease is silent in such regard, then in such order of priority as Landlord deems appropriate. The receipt of such funds by Landlord shall in no manner be deemed to create a direct lease or sublease between Landlord and Subtenant. If Subtenant fails to deliver its Sublease payments directly to Landlord as required herein following receipt of written notice from Landlord as described above, then Landlord shall have the right to remove any signage of Subtenant, at Subtenant's cost, located outside the Premises or in the Building lobby or elsewhere in the Building and to pursue any other rights or remedies available to Landlord at law or in equity.

10.   Excess Rent. If Landlord is entitled to any excess rent (defined below) from Sublandlord pursuant to the terms of the Lease, then, in addition to all rent otherwise payable by Sublandlord to Landlord under the Lease, Sublandlord shall also pay to Landlord the portion of the excess rent to which Landlord is entitled under the Lease, in the manner described in the Lease. As used herein, the "excess rent" shall be deemed to mean any payments from Subtenant under the Sublease which exceed the payments payable by Sublandlord to Landlord under the Lease for the Sublet Premises. Landlord's failure to bill Sublandlord for, or to otherwise collect, such sums shall in no manner be deemed a waiver by Landlord of its right to collect such sums in accordance with the Lease.

11.   Compliance with Executive Order 13224. Sublandlord and Subtenant each, respectively, hereby represents, warrants, and covenants to Landlord throughout the term of the Sublease as follows: that (i) it is not, and is not acting for the benefit of, a person or entity blocked pursuant to Executive Order 13224 signed on September 24, 2001 and entitled "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism" or under any rules or regulations promulgated thereunder (collectively, the "**Executive Order**") and (ii) it does not have any interest in any property blocked by the Executive Order. In the event that Sublandlord breaches its representations, warranties, or covenants made to Landlord in this Section, Landlord shall have all rights and remedies available to it under the Lease and all other rights and remedies available at law and in equity, including but not limited to forcible eviction, and, in the event that Subtenant breaches its representations, warranties, or covenants to Landlord made in this Section, Sublandlord and Subtenant agree that, upon Landlord's demand, the Sublease shall be immediately terminated, whereupon Sublandlord shall cause Subtenant to vacate the Sublet Premises and Sublandlord shall exercise, as necessary, all rights and remedies under the Sublease, and at law and in equity, including but not limited to forcible eviction. Sublandlord and Subtenant each hereby agrees to defend, indemnify and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities, fines, penalties, forfeitures and expenses (including costs and attorneys' fees) arising from or related to any breach on its part of the foregoing obligations under this Section.

12.   Notice Addresses.

(a) <u>Landlord Notice Addresses.</u> Any notices to Landlord shall be effective when served to Landlord in accordance with the terms of the Lease at the following addresses:

Landlord:

With copies to:

BRE River North Point Owner LLC
c/o Equity Office
222 South Riverside Plaza
Suite 2000
Chicago, Illinois 60606
Attention: Asset Manager

BRE River North Point Owner LLC
c/o Equity Office
350 North Orleans Street
Chicago, Illinois 60654
Attention: Property Manager

and

Equity Office
222 South Riverside Plaza, Suite 2000
Chicago, Illinois 60606
Attention: Managing Counsel

(b) <u>Sublandlord Notice Addresses.</u> Any notices to Sublandlord shall be effective when served to Sublandlord in accordance with the terms of the Lease at the following addresses:

Sublandlord:

With a copy of any notices whereby Landlord is notifying Sublandlord of a Sublandlord default under the Lease, or notifying Sublandlord of, or responding to Sublandlord with respect to, any option rights of Sublandlord under the Lease, or providing any notices other than routine notices concerning the operation of the Building, to:

Rocket Fuel Inc.
1900 Seaport Boulevard
Redwood City, California 94063
Attention: CEO, Director of Real
Estate & Facilities

Rocket Fuel Inc.
1900 Seaport Boulevard
Redwood City, California 94063
Attention: Office of the General Counsel

(c) <u>Subtenant Notice Addresses.</u> Any notices to Subtenant shall be effective when served to Sublandlord in accordance with the terms of the Lease at the following addresses:

Subtenant:

With a copy of any notices whereby Landlord is notifying Subtenant of a Subtenant and/or Sublandlord default under the Lease, or providing any notices other than routine notices concerning the operation of the Building, to:

Nitel, Inc.
1101 W Lake Street

Nitel, Inc.
1101 W. Lake Street

5

Chicago, Illinois 60607                Chicago, Illinois 60607
Attention: Ron Grason             Attention: General Counsel

13.   Authority.  Each of Landlord, Sublandlord and Subtenant represents hereby that its
signatory to this Consent Agreement has the authority to execute and deliver the same
on behalf of the party hereto for which such signatory is acting.

14.   Counterparts.  This Consent Agreement may be executed in counterparts and shall
constitute an agreement binding on all parties notwithstanding that all parties are not
signatories to the original or the same counterpart provided that all parties are furnished
a copy or copies thereof reflecting the signature of all parties.  Transmission of a
facsimile or by email of a pdf copy of the signed counterpart of this Consent Agreement
shall be deemed the equivalent of the delivery of the original, and any party so delivering
a facsimile or pdf copy of the signed counterpart of this Consent Agreement by email
transmission shall in all events deliver to the other party an original signature promptly
upon request.

## [SIGNATURES ARE ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, Landlord, Sublandlord and Subtenant have executed this
Consent Agreement under seal in two or more counterparts as of the date set forth above.

### LANDLORD:

**BRE RIVER NORTH POINT OWNER LLC, a Delaware
limited liability company**

By: _____

Name: _____

Title: _____

### SUBLANDLORD:

**ROCKET FUEL INC., a Delaware corporation**

By: _____

Name: _____

Title: _____

**SUBTENANT:**

**NITEL, INC., an Illinois corporation**

By:    _____

Name:   PAUL   RIOS

Title:   GENERAL   COUNSEL

P:\Legal\LEASING\Chicago Region\River North Point\Rocket Fuel-Consent-Sublease to Nitel-1.doc

# EXHIBIT A

# SUBLEASE AGREEMENT



LEGAL COUNSEL

200 W. Madison Street | Suite 3500 | Chicago, IL 60606-3417
Chicago Columbus DuPage County, Ill.
Indianapolis New York Philadelphia Washington, D.C.

March 29, 2021

WRITER'S DIRECT NUMBER: (312) 726-6244
DIRECT FAX: (312) 726-6214
EMAIL: Jason.Torf@icemiller.com

**VIA E-MAIL and OVERNIGHT DELIVERY**

Ariella Thal Simonds (asimonds@ktbslaw.com)
Thomas E. Patterson (tpatterson@ktbslaw.com)
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067

> *Re:* *In re Sizmek, Inc., et al., Case No. 19-10971 (Bankr. S.D.N.Y.)*
>
> *Demand for Return of $271,092.87 Security Deposit Previously Held in Trust by Debtor Sizmek DSP Inc. for the Benefit of Nitel, Inc.*

Dear Ms. Simonds and Mr. Patterson:

This firm represents Nitel, Inc. ("Nitel") with respect to the above-referenced jointly administered bankruptcy cases, which includes a case filed by debtor Sizmek DSP, Inc. (the "Debtor"). It is our understanding that your firm represents Cerberus Business Finance, LLC, as administrative agent and collateral agent for secured lenders Cerberus Business Finance, LLC and PEPI Capital, L.P. (collectively the "Secured Lenders"). Nitel was the sublessee of approximately 32,115 rentable square feet of space located on the 13th Floor, described as Suite 1300N or Suite 1300, of 350 North Orleans Street, Chicago, Illinois (the "Subleased Premises") pursuant to a sublease (the "Sublease") between Nitel and the Debtor. Prior to its bankruptcy filing, the Debtor held a security deposit of $271,092.87 in trust for the benefit of Nitel (the "Security Deposit").

Under the terms of the Sublease, Nitel is entitled to the return of its full Security Deposit. It is our understanding that the Secured Lenders swept all cash from the Debtor's accounts on or about March 25, 2019, including the Security Deposit. The Security Deposit was not property of the Debtor and was not the Secured Lenders' collateral. Accordingly, the Secured Lenders' exercise of control over the Security Deposit constitutes conversion of Nitel's property under applicable Illinois law.

Demand is hereby made for return of the Security Deposit in full. Payment should be made via check payable to Nitel, Inc. and should be sent to the following address:

Jason M. Torf
Ice Miller LLP
200 W. Madison St.
Suite 3500
Chicago, IL 60606-3417

4846-8848-2530.3

Ariella Thal Simonds
Thomas E. Patterson
March 29, 2021
Page 2


If the Secured Lenders have not returned the Security Deposit in full by **April 5, 2021**, Nitel will commence legal action for return of the Security Deposit.

Please let me know if you have any questions or would like to discuss this matter.


Very truly yours,


Jason M. Torf

cc:    John C. Cannizzaro