UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                          :     Chapter 7

SIZMEK INC., et al.,                            :     Bankr. Case No. 19-10971 (DSJ)

           Debtors,                             :     (Joint Administration)

---------------------------------------------------------------x

10FN, Inc.,                                     :     Adv. Proc. No. 21-01160 (DSJ)

           Plaintiff,                           :     District Court Case No.
                                                         21-cv-05996 (VEC)
v.                                              :

CERBERUS BUSINESS FINANCE, LLC,                 :     ORAL ARGUMENT REQUESTED
PEPI CAPITAL, L.P.,
KEN SAUNDERS, ANDREW BRONSTEIN,                 :
SASCHA WITTLER and MARK GRETHER,
                                                :
           Defendants.
---------------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ANDREW BRONSTEIN'S
MOTION TO DISMISS THE AMENDED COMPLAINT

## INTRODUCTION

The Amended Complaint filed by plaintiff 10FN, Inc. ("Nitel") wrongly attempts to use the existence of a pending Chapter 7 bankruptcy proceeding involving Sizmek DSP, Inc. (formerly named Rocket Fuel, Inc.) ("Rocket Fuel") to bring state law claims of conversion and negligence in Federal court and seek an award of money damages against defendant Andrew Bronstein ("Bronstein") concerning a commercial lease security deposit received by Rocket Fuel from Nitel. The state law claims do not arise from or relate to the pending Chapter 7 bankruptcy proceeding involving Rocket Fuel and, therefore, this Court does not have jurisdiction over those state law claims pursuant to 28 U.S.C. §§ 157 and 1334, the sole bases for subject matter jurisdiction alleged in the Amended Complaint.

Moreover, the Amended Complaint fails to state causes of action for either conversion or negligence against Bronstein. According to the Amended Complaint: (a) in December 2016, Rocket Fuel received the security deposit [Amended Complaint ("Am. Compl."), ¶¶ 12-15]; (b) in September 2017, Rocket Fuel granted certain Secured Lenders the right to "control and sweep" Rocket Fuel's bank accounts, including the account that contained the security deposit [Am. Compl., ¶¶ 17-18]; and (c) in March 2019, the Secured Lenders swept Rocket Fuel's bank accounts and thereby "caused some or all of the Security Deposit to be transferred from [Rocket Fuel] to the Secured Lenders." [Am. Compl, ¶¶ 17-18.] Bronstein, however, served as Chief Financial Officer of a Rocket Fuel affiliate – Sizmek, Inc. – from approximately March 2018 to January 2019. [Am. Compl., ¶ 6.] Therefore, Bronstein simply had no involvement with the original receipt of the security deposit by Rocket Fuel, the granting of any rights to the Secured Lenders concerning Rocket Fuel's bank accounts or the Secured Lenders' sweep of Rocket Fuel's bank accounts in March 2019. In the absence of any involvement in those events,

Bronstein cannot be held liable for conversion or negligence in connection with the security deposit.

## FACTS RELEVANT TO THE CLAIMS AGAINST BRONSTEIN[1]

Nitel entered into a sublease for office space in Chicago, Illinois from Rocket Fuel in December 2016. Am. Compl. ¶¶ 12-14. Pursuant to the terms of the sublease, Nitel provided a security deposit in the amount of $271,092.87 to Rocket Fuel. Am. Compl. ¶ 15. Paragraph 6 of the sublease states that those funds serve as "security for the performance by [Nitel] of the terms and conditions of the Sublease." Am. Compl., Ex. A, p. 3. Paragraph 6 of the sublease does not require Rocket Fuel to place the security deposit in a segregated account or pay interest to Nitel on those funds.[2]

The Amended Complaint erroneously states that Sizmek DSP, Inc. "acquired Rocket Fuel" in 2017 and "with it the Sublease and the Security Deposit . . . ." Am. Compl. ¶ 17. In fact, Sizmek DSP, Inc. is merely a new name for the same Delaware corporation that was previously known as Rocket Fuel, Inc. *See* Knuts Decl., Exs. 1 and 2.

The Amended Complaint accurately alleges that Rocket Fuel became a party to a financing agreement in September 2017 and that, as part of that financing agreement, Rocket Fuel granted certain liens to Secured Lenders. Am. Compl. ¶ 17. At that time, Rocket Fuel also

---

[1] This description of the relevant facts is based upon the allegations set forth in the Amended Complaint and certain court filings and State of Delaware corporation records attached as exhibits to the accompanying sworn declaration of Robert Knuts, dated April 7, 2022 ("Knuts Decl.").

[2] The City of Chicago Residential Landlord and Tenant Ordinance ("RLTO"), which requires payment of interest on security deposits and prohibits commingling of security deposits with a landlord's other funds, applies to certain residential apartments. Chicago Municipal Code 5-12-010, et seq. The RLTO states that such deposits shall not be subject to claims by any creditor of the landlord. *Id.*, 5-12-080. No similar ordinance applies to commercial leases. According to several commentators, Illinois law does not prohibit commercial lease landlords from commingling security deposits with other landlord assets. *See* Knuts Decl., Ex. 3 (p. 4) and Ex. 4 (p. 3).

2

granted the Secured Lenders rights to control and sweep Rocket Fuel bank accounts under terms and conditions defined in the financial agreement and related documents. Am. Compl. ¶ 18.

According to Nitel, Bronstein served as CFO of Rocket Fuel from March 2018 through January 2019. Am. Compl. ¶ 6. Nitel further claims that while serving as CFO of Rocket Fuel in 2018, "Bronstein would have had knowledge of Nitel's Security Deposit and that it was being held in accounts that were subject to the control and potential sweep of the Secured Lenders." Am. Compl. ¶ 27. Nitel does not make any factual allegations concerning any affirmative action taken by Bronstein regarding the security deposit during the time he served as CFO of Sizmek, Inc.

In March 2019, the Secured Lenders swept all cash from Rocket Fuel's accounts. Am. Compl. ¶ 19. According to Nitel, when the Secured Lenders took that action, the Secured Lenders "caused some or all of the Security Deposit to be transferred from [Rocket Fuel] to the Secured Lenders." Am. Compl. ¶ 20.

## THE CLAIMS FOR RELIEF AGAINST BRONSTEIN

The Amended Complaint alleges that this Court has subject matter jurisdiction over the claims against Bronstein pursuant to 28 U.S.C. §§157 and 1334. Am. Compl. ¶ 9.

Nitel alleges two causes of action against "the Sizmek Defendants" (Bronstein, Ken Saunders, Sascha Wittler and Mark Grether) – Conversion and Negligence. Am. Compl. ¶¶ 46-60 and 61-66. In neither cause of action does Nitel specifically identify any affirmative action taken by Bronstein individually regarding the security deposit. Based upon the time frame that Nitel alleges that Bronstein served as CFO of Rocket Fuel, Nitel rests its claims against Bronstein on the allegations that he:

(a) permitted the Security Deposit to be stored in accounts subject to the lien of the Secured Lenders; [Am. Compl. ¶ 49];

(b) ratified the corporate decisions to comingle and not separate the Security Deposit; [Am. Compl. ¶ 52];

(c) ratified the corporate decisions to permit the Security deposit to become subject to the Secured Lenders' lien; [Am. Compl. ¶ 55]; and

(d) participated in Rocket Fuel's failure to segregate the Security Deposit. [Am. Compl. ¶ 63].

As described below: (a) this Court does not have subject matter jurisdiction over these state law claims under 28 U.S.C. §§157 and 1334; and (b) the factual allegations against Bronstein are insufficient to state claims for conversion or negligence against Bronstein. Therefore, this Court should dismiss all claims in the Amended Complaint against Bronstein with prejudice.

ARGUMENT

I.

THE AMENDED COMPLAINT SHOULD BE
DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In ruling on such a motion, a court may consider evidence outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

28 U.S.C. §1334(b) states, in relevant part, that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." In March 2019, Rocket Fuel filed a voluntary bankruptcy petition [Knuts Decl., Ex. 1] and that case remains pending in the United States Bankruptcy Court for the Southern District of New York.

Here, the state law claims for conversion and negligence do not arise "under title 11" nor do they arise "in" the pending Rocket Fuel bankruptcy case. Civil proceedings are "related to cases under title 11" only

> if the outcome of those proceedings "'in any way impacts upon the handling and administration of the bankrupt estate.'"

*In re Cavalry Construction Inc.*, 496 B.R. 106, 111-12 (S.D.N.Y. 2013) (citing *Enron Corp.*, 353 B.R. at 57 *112 (*quoting In re Boco Enters., Inc.*, 204 B.R. 407, 410 (Bankr.S.D.N.Y.1997) and citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

There is no allegation in the Amended Complaint that even attempts to describe how Nitel's attempt to collect money damages relating to a security deposit from Bronstein individually, based solely on pure state law claims, could have any impact on "the handling and administration of the [Rocket Fuel] estate." Therefore, the Court lacks subject matter jurisdiction over these state law claims and the Amended Complaint should be dismissed.

II.

THE CLAIMS FOR CONVERSION AND NEGLIGENCE AGAINST
BRONSTEIN SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM[3]

When adjudicating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, if pleadings "are no more than conclusions," such pleadings "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 679. *See Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (the Court need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings) (internal quotation marks omitted). If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief. *Iqbal*, 556 U.S. 679.

A.  The Conversion Claim

Under New York law, to plead a cause of action for damages based upon conversion, a plaintiff must allege:

> (1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right.

*Giardini v. Settanni*, 159 A.D. 3d 874, 875 (2d Dep't 2018) (citations omitted). An officer of a corporation is not liable for any act of conversion by that corporation "if he did not participate in and was not connected with the acts in any manner." *PDK Labs, Inc v. GMG Trans West Corp.*, 101 A.D.3d 970, 973 (2nd Dep't 2012).

---

[3]  In addition to the arguments set forth in this memorandum of law, Bronstein also relies in support of his motion upon the arguments presented by defendant Ken Saunders in support of his separate motion to dismiss the amended complaint for failure to state claims for relief.

6

Here, the Amended Complaint acknowledges that Bronstein did not serve as CFO of Rocket Fuel at the time of any acts of conversion – the receipt of the Security Deposit in December 2016, the creation of the financing agreement in September 2017, or the sweeping of the Rocket Fuel accounts in March 2019. There is no allegation that Bronstein individually "exercised unauthorized dominion" over the Security Deposit at any time. Therefore, the Conversion claim must be dismissed for failure to state a claim for relief as to Bronstein.

B.  The Negligence Claim

Under New York law, a negligence claim requires a plaintiff to plead (and prove):

> (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.

*Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985). "In the absence of a duty, as a matter of law, there can be no liability." *Pasternack v. Laboratory Corp. of America Holdings*, 27 N.Y.3d 817, 825 (2016) (citing *Solomon*, 66 N.Y.2d at 1028).

Here, the Amended Complaint alleges that Bronstein, as an officer of Rocket Fuel, "had a duty to ensure [Rocket Fuel] complied with its obligations as a fiduciary under Illinois law." Am. Compl. ¶ 62. But any "duty" arising from Bronstein's role as CFO of Rocket Fuel was owed to Rocket Fuel and its shareholders. *See, e.g., Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del.) (officers of a Delaware corporation owe fiduciary duties of care and loyalty to the corporation and its shareholders.)

The Amended Complaint fails to allege the existence of any "duty" owed by Bronstein to Nitel. In the absence of any allegation of a duty owed to Nitel, the negligence claim against Bronstein must be dismissed.

CONCLUSION

For the reasons set forth above, this Court should: (a) dismiss the Amended Complaint for lack of subject matter jurisdiction; and (b) dismiss the conversion and negligence claims against Bronstein for failure to state claims for relief.

Dated: New York, New York
April 7, 2022

SHER TREMONTE LLP

By: /s/ *Robert Knuts*
Robert Knuts

90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
Email: rknuts@shertremonte.com

*Attorneys for Defendant Andrew Bronstein*