UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SIZMEK INC., et al.<br><br>                              Debtors, | Chapter 7<br><br>Bankr. Case No. 19-10971 (DSJ)<br><br>(Jointly Administered) |
| 10FN, INC.,<br>                              Plaintiff,<br><br>       -against-<br><br>CERBERUS BUSINESS FINANCE, LLC, PEPI CAPITAL, L.P., KEN SAUNDERS, ANDREW BRONSTEIN, SASCHA WITTLER, and MARK GRETHER,<br><br>                              Defendants. | Case No. 1:21-cv-05996(VEC)<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SAUNDERS'S MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**MORRISON COHEN LLP**
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (917) 522-3170
E-mail: hrosenblat@morrisoncohen.com

*Counsel for Defendant Ken Saunders*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 5

    I.       Standard for Dismissal Under FRCP 12(b)(6) ....................................................... 5

    II.      Count III—Conversion—of the Amended Complaint
             Should be Dismissed as Against Defendant Saunders ......................................... 6

        A.   Elements Necessary to Establish a Claim for Conversion........................................... 6

        B.   Plaintiff's Amended Complaint Contradicts
            and Undercuts its Own Claim for Conversion ......................................................... 7

            1.   The Sublease by its terms in September 2017
                 defeats Plaintiff's Conversion Claim ................................................................ 7

            2.   Defendant Saunders Did Not Actively Participate in the Sweep
                 and is not the Party Exercising Control over the Security Deposit................ 11

    III.     Count IV—Negligence—of the Amended Complaint
             Should be Dismissed as Against Defendant Saunders ......................................... 13

       A.  Elements Necessary to Establish a Claim for Negligence ......................................... 13

       B.  Defendant Saunders Did Not Owe a Duty to Plaintiff................................................ 14

       C. Plaintiff's Negligence Claim Is Duplicative of its Conversion Claim......................... 14

CONCLUSION............................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5, 6,11

*Daniels v. Powell*,
   604 F. Supp 689 (N.D. Ill 1985) .....................................................................................7, 9, 10

*DeGeer v. Gillis*,
   707 F. Supp. 2d 784 (N.D. Ill. 2010) .....................................................................................14

*Evergreen Marine Corp. v. Div. Sales, Inc.*,
   2003 WL 1127905, Case No. 01-C-4933 (N.D. Ill., March 12, 2003) ............................6, 9, 10

*Fintec Group, Inc. v. U.S. Bank, N.A.*,
   Case No. 13-C-8076, 2014 WL 4784141 (N.D. Ill. Sept. 25, 2014) ......................................13

*Grant v. County of Erie*,
   542 Fed. Appx. 21 (2d Cir. 2013) ............................................................................................6

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
   496 F.3d 229 (2d Cir. 2007) ....................................................................................................5

*Maglaya v. Kumiga*,
   Case No. 14-cv-3619, 2015 WL 4624884 (N.D. Ill. Aug. 3, 2015) .......................................14

*Papasan v. Allain*,
   478 U.S. 265 (1986) ................................................................................................................5

*Setera v. Nat'l City Bank*,
   No. 07 C 2978, 2008 WL 4425446 (N.D. Ill. Sept. 26, 2008) ...........................................13,14

**STATE CASES**

*Cirrincione v. Johnson*,
    703 N.E.2d 67 (Ill., 1998) ................................................................................................6

*IOS Capital, Inc. v. Phoenix Printing, Inc.*,
    808 N.E.2d 606 (Ill App. Ct., 2004) ................................................................................7

*Marshall v. Burger King Corp.*,
    856 N.E.2d 1048 (Ill. 2006) ..........................................................................................14

*Nat'l Acceptance Co. of America v. Pintura Corp.*,
    418 N.E.2d 1114 (Ill App. Ct., 1981) .........................................................................7, 12

**FEDERAL RULES & REGULATIONS**

735 ILCS 5/13-205 ....................................................................................................................7

Rule 12(b)(6) of the Federal Rules of Civil Procedure ........................................................1, 5

Federal Rules of Evidence Rule 201 ....................................................................................6, 14

Defendant Ken Saunders ("**Defendant Saunders**") respectfully submits this memorandum of law ("**Memorandum of Law**") in support of his motion for an order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing with prejudice, as against Defendant Saunders, Counts III and IV of the *First Amended Complaint* [ECF No. 28] ("**Amended Complaint**") filed by Plaintiff 10FN, Inc. ("**Plaintiff**") on February 18, 2022.

## PRELIMINARY STATEMENT[1]

Counts III and IV of the Amended Complaint should be dismissed against Defendant Saunders. Plaintiff, the assignee of a sublease, amended its original complaint to bring in nominal Defendant Saunders, and other former officers of Sizmek and DSP, for no other reason than to implicate third–party sources for recovery. Regardless of the fact that all of the parties to this litigation know exactly where the funds presently reside, Defendant Saunders has unjustifiably been swept into and made hostage to unnecessary litigation as it relates to him.

Defendant Saunders never dispossessed Plaintiff of the Security Deposit. Plaintiff never made a demand on Defendant Saunders for the return of the Security Deposit. Defendant Saunders was not (a) involved with the transaction surrounding the Sublease and Security Deposit, nor (b) employed by the company holding the Security Deposit when it was swept. There is no set of facts Plaintiff could assert as to Defendant Saunders that could properly implicate him in the actions alleged in the Amended Complaint. Defendant Saunders, other than being a former CFO of Sizmek at some point in time, was neither involved nor even with the company when the Security Deposit was allegedly converted.

---

[1] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Memorandum of Law.

And any notion that Defendant Saunders owed a duty of care to Plaintiff under the set of fact and circumstances present here defies logic. Plaintiff and Defendant Saunders had no relationship whatsoever, needless to say one that would create a duty of care.

For the reasons set forth above and more fully addressed below, Plaintiff's Count III for conversion as against Defendant Saunders fails. Similarly, Plaintiff's Count IV for negligence as against Defendant Saunders fails as well. The deficiencies of the Amended Complaint cannot be remedied and warrant dismissal with prejudice as against Defendant Saunders.

## STATEMENT OF FACTS[2]

Defendant Saunders was the Chief Financial Officer of Sizmek Inc. ("**Sizmek**") from October 7, 2014 until September 30, 2017 (***not*** March 2018 as asserted in the Amended Complaint). *See Declaration of Ken Saunders In Support of Motion to Dismiss* ("**Saunders's Decl.**"), ¶3. Roughly 18 months after Defendant Saunders left Sizmek, Sizmek and certain affiliated entities sought bankruptcy protection under Title 11 of the United States Code, 11 U.S.C. §101 *et seq.*, with the filing of a petition on March 29, 2019. Saunders's Decl., Ex. A (Amended Complaint), ¶¶7&19.

Plaintiff is an assignee of Network Innovations d/b/a Nitel, Inc. ("**Nitel**"). Saunders's Decl., Ex. A, p.1.[3] In November 2016, under a sublease ("**Sublease**"), by and between Nitel and Rocket Fuel Inc. ("**Rocket Fuel**"), Nitel became the sub–lessee of approximately 32,115 rentable square feet of space located on the 13th Floor, described as Suite 1300N or Suite 1300, of 350 North

---

[2] Facts from the Amended Complaint that are set forth in this Statement of Facts are presumed true ***only*** for purposes of this Memorandum of Law. Defendant Saunders does not concede the truth of any of the allegations made in the Amended Complaint and hereby reserves and preserves all of his rights to deny or contest any allegation made in the Amended Complaint.

[3] Plaintiff did not attach the assignment agreement between itself and Nitel to the Amended Complaint, despite it being in its custody, possession, and control.

2

Orleans Street, Chicago, Illinois. Saunders's Decl., Ex. A, ¶ 12 & §1 of Ex. A to the Amended Complaint. The Sublease provided that Nitel remit a security deposit to Rocket Fuel in the amount of $271,092.87 ("**Security Deposit**"). Saunders's Decl., Ex. A, ¶15. The Sublease is governed by Illinois law. Saunders's Decl., Ex. A, ¶16. In connection with the Sublease, Rocket Fuel, Nitel, and BRE River North Point Owner LLC executed that certain *Landlord Consent to Sublease*, dated December 19, 2016, that addressed the parties' rights with respect to the Sublease and other related documents. Saunders's Decl., Ex. A, ¶¶13-4.

Rocket Fuel, subsequent to entering into the Sublease, was acquired ("**Sizmek–Rocket Fuel Transaction**") through a cash tender offer that closed on September 6, 2017. Saunders's Decl., ¶4 & Ex. A, ¶16-7. As a result of the Sizmek–Rocket Fuel Transaction, Rocket Fuel subsequently changed its name to Sizmek DSP Inc. ("**DSP**")[4] and the Sublease and the Security Deposit remained after the name change. Saunders's Decl., Ex. A, ¶12. As part of the Sizmek–Rocket Fuel Transaction, Cerberus Business Finance, LLC ("**Cerberus**"), purportedly became the administrative agent and collateral agent for itself and PEPI Capital, L.P. ("**PEPI**," and with Cerberus, "**Secured Lenders**") under a financing agreement dated September 6, 2017, for certain revolving and term loans that were purportedly secured by first-priority liens on substantially all Sizmek's assets ("**2017 Refinancing**"). Further, the proceeds of the 2017 Refinancing were in part used to fund the Sizmek–Rocket Fuel Transaction. Saunders's Decl., Ex. A, ¶17.

Sizmek, as part of the 2017 Refinancing, executed account control agreements that authorized the Secured Lenders to control and sweep certain accounts. Saunders's Decl., Ex. A,

---

[4] To the extent it is determined from the Sizmek or DSP corporate records that Defendant Saunders was not also the CFO of DSP, Defendant Saunders hereby reserves and preserves his right to move for immediate dismissal due to his lack of corporate involvement with this matter at all, which is not to be deemed or construed as an admission to any allegation in the Amended Complaint.

3

¶18. A few days prior to the Sizmek bankruptcy filing (*i.e.*, March 29, 2019), on or about March 25, 2019, the Secured Lenders swept all the cash from Sizmek accounts ("**Sweep**"). Saunders's Decl., Ex. A, ¶19 citing *Declaration of Sascha Wittler, Chief Financial Officer of Sizmek Inc., (I) In Support of Chapter 11 Petitions and (II) Pursuant to Local Rule 1007–2* (ECF No. 13, Ch. 7 Case No. 19-10971) ("**Wittler Declaration**"). When the Secured Lenders swept the Sizmek accounts, they caused some or all of the Security Deposit to be transferred from Sizmek to the Secured Lenders. Saunders's Decl., Ex. A, ¶20. As is typical, in connection with the Sizmek–Rocket Fuel Transaction and the 2017 Refinancing, the Secured Lenders conducted due diligence. Saunders's Decl., Ex. A, ¶21.

In 2018, Sizmek underwent a recapitalization ("**2018 Recapitalization**"), in which it incurred second and third lien financing. Also in 2018, Alvarez & Marsal ("**A&M**") provided professional services to the Secured Lenders regarding Sizmek and its financial condition. In doing so, A&M accessed Sizmek's records. During the course of its engagement, A&M provided reports to the Secured Lenders regarding the Sizmek's subleases, including security deposits held by Sizmek for the benefit of various sub–lessees. Saunders's Decl., Ex. A, ¶22. Beginning in February 2019, the Secured Lenders commenced a significant diligence process of the business of Sizmek and its affiliates, during which it met with key personnel of Sizmek and its affiliates and also participated in the management of Sizmek and its affiliates. Saunders's Decl., Ex. A, ¶23 citing Wittler Declaration, ¶26. As such, the Secured Lenders had access to or received information regarding the Sublease and the Security Deposit. Saunders's Decl., Ex. A, ¶24. Thus, prior to the Sweep, the Secured Lenders knew that DSP was holding security deposits for various sub–lessees,

including the Security Deposit implicated here. Saunders's Decl., Ex. A, ¶25. Plaintiff made demand for the Security Deposit only on: (i) DSP in December 2019[5] and (ii) counsel for the Secured Lenders on March 29, 2021 (not on the individual defendants). Saunders's Decl., Ex. A (Ex. C of Amended Complaint).

## ARGUMENT

### I. Standard for Dismissal Under FRCP 12(b)(6)

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("**FRCP**"), a court must accept as true all well–pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Factual allegations are therefore afforded a presumption of truth, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will

---

[5] Despite attaching the March 29, 2021 demand letter as Exhibit C to the Amended Complaint, Plaintiff did not specify the actual date of the demand on DSP nor attach that letter as an exhibit to the Amended Complaint.

reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556. A court "[i]In its review, [] is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Grant v. County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013).

## II. Count III—Conversion—of the Amended Complaint Should be Dismissed as Against Defendant Saunders

Assuming, as we must, the allegations in the Amended Complaint are true, Plaintiff still failed to establish a claim for conversion against Defendant Saunders for a number of reasons. Plaintiff's strategy of amending its complaint and including a past chief financial officers (and other former chief financial officers that came after Defendant Saunders and a chief executive officer) in a "see what sticks" approach has improperly and unjustifiably swept–up nominal Defendant Saunders. Defendant Saunders spent all of three weeks with Sizmek during all times relevant to and covered by the Amended Complaint.

### A. *Elements Necessary to Establish a Claim for Conversion*

In order for a claim of conversion to be established "a plaintiff must demonstrate that: '(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.'" *Evergreen Marine Corp. v. Div. Sales, Inc.*, 2003 WL 1127905, *7, Case No. 01-C-4933 (N.D. Ill., March 12, 2003) citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill., 1998). Moreover, "to prevail in an action for conversion, the plaintiff must allege his immediate right of possession *at*

*the time of the conversion* as well as the defendant's interference with the right to possession." *Daniels v. Powell*, 604 F. Supp 689, 696 (N.D. Ill 1985) (emphasis added).

Further, "'a corporate officer's individual liability for conversion committed by him personally in [sic] behalf of the corporation is established in the same manner as his liability for any other tort; by proof of active participation in the conversion.' Therefore, an officer or director is liable in conversion only where he *actively participates* therein." *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 611 (Ill App. Ct., 2004) (emphasis added) citing *Nat'l Acceptance Co. of America v. Pintura Corp.*, 418 N.E.2d 1114, 1117 (Ill App. Ct., 1981) (finding officer liable because he actively participated in conversion through the endorsing and depositing checks).

### B. Plaintiff's Amended Complaint Contradicts and Undercuts its Own Claim for Conversion[6]

#### 1. The Sublease by its terms in September 2017 defeats Plaintiff's Conversion Claim

As set forth in the section 3 of the Sublease, the term of the Sublease was "for the period commencing on the later of (i) January 1, 2017 or (ii) thirty (30) days after Sublessor delivers possession of the Subleased Premises to Sublessee with the Furniture . . . and ending on June 30, 2021 . . . ." Sublease, §3 (attached as Ex. A to the Amended Complaint, which is attached as Ex. A to the Saunders's Decl.). Further, section 6 of the Sublease stated, in pertinent part;

> Security Deposit: Upon execution hereof by Sublessee and consent by Master Lessor to this Sublease, Sublessee shall deposit with Sublessor the sum of Two Hundred Seventy-One Thousand Ninety-Two and 87/100 Dollars ($271,092.87) [], in cash, as security for the performance by Sublessee of the terms and conditions of this

---

[6] The Amended Complaint, filed as against the newly added individual defendants on February 22, 2022, is deafeningly silent as to when the Security Deposit was paid to Rocket Fuel and, was it properly segregated by Rocket Fuel at that point in time. To the extent it was paid in November/December 2016 (Saunders's Decl., Ex. A, ¶¶13-4 and Ex. B to Amended Complaint), and was **not** segregated properly by Rocket Fuel—if that is the point in the time when Plaintiff contends the conversion occurred as opposed when the Sweep occurred— Plaintiff's action now against the individual defendants would, arguably, be barred by the five year statute of limitation under Illinois law. *See* 735 ILCS 5/13-205.

7

>Sublease. If Sublessee fails to pay Rent or other charges due hereunder or otherwise defaults with respect to any provision of this Sublease, then Sublessor may draw upon, use, apply or retain all or any portion of the Security Deposit for the payment of any Rent or other charge in default, for the payment of any other sum which Sublessor has become obligated to pay by reason of Sub lessee's default, or to compensate Sub lessor for any loss or damage which Sublessor has suffered thereby. . . ***No later than thirty (30) days after the expiration of this Sublease***, if Sub lessee is not in default, Sub lessor shall return to Sub lessee so much of the Security Deposit as has not been applied by Sub lessor pursuant to this paragraph, or which is not otherwise required to cure Sublessee's defaults.

Sublease, §6 (emphasis added). Nowhere in section 6 of the Sublease does it state the Security Deposit must be segregated.

These sections of the Sublease make it impossible for Plaintiff to establish the second and fourth elements necessary for a claim of conversion against Defendant Saunders. Plaintiff paints with a broad brush in the Amended Complaint and attempts to include Defendant Saunders in events that took place before the Sizmek–Rocket Fuel Transaction (*i.e.*, before Defendant Saunders could have possibly been involved with the Security Deposit at all) or long after he had left and was no longer with Sizmek. Plaintiff ***makes no*** specific allegations in the Amended Complaint that Defendant Saunders did or took any action with regard to the Security Deposit while with Sizmek in September 2017. Plaintiff's solution to not making (having) specific allegations that in any way demonstrate or even intimate an action was to just simply add all the other individual defendants so that, at the end of the day, Plaintiff could see which one this conversion claim ultimately sticks too, if any of them. Under these facts (or unalleged facts here), it cannot stand that events and actions before DSP or Sizmek were even involved with the Security Deposit or that took place 18 months (*i.e.*, the Sweep) after Defendant Saunders's started a new job with a new (and wholly unrelated) entity can somehow now implicate Defendant Saunders in this lawsuit simply because he was, at some point in time (long before the Sweep), a CFO of Sizmek. Plaintiff

8

makes no effort whatsoever to connect Defendant Saunders to the issues at hand other than to state he was a CFO.

Specifically, section 3 of the Sublease makes clear that Plaintiff (or Nitel) and Rocket Fuel had essentially just entered into the Sublease by the time it reached Sizmek in September 2017 and at that point in time (the only point in time relevant to or could implicate Defendant Saunders) Plaintiff *did not* have "an absolute and unconditional right to the *immediate possession*" of the Security Deposit by the very terms of the Sublease. *Evergreen Marine Corp.*, 2003 WL 1127905, *7. Under section 6 of the Sublease, the Security Deposit was (i) being held to be used for possible offsets against Nitel and (ii) was only potentially returnable 30 days after termination of the Sublease and pending a determination if there were any defaults or damages that the Security Deposit was going to be used to cure or remedy. Ex. A to Amended Complaint, Sublease, §6. The import of section 6 of the Sublease is unambiguous and set-outs that Nitel did not have the unconditional right to the immediate possession of the Security Deposit in September 2017. Moreover, to use a view of the world, as Plaintiff attempts with the Amended Complaint, some 18 months later defies logic, is not appropriate, and clearly is a misguided attempt to shoehorn a claim of conversion against Defendant Saunders when no claim actually exists. Further, Plaintiff conversion claim must demonstrate the immediate right to possession at the time of the conversion. *Daniels*, 604 F. Supp at 696. Defendant Saunders was not employed by Sizmek at the time of the Sweep (*i.e.*, Plaintiff's alleged conversion). As such, Plaintiff cannot establish the second element of a claim for conversion against Defendant Saunders.

Additionally, the fourth element needed for a claim of conversions fails due to the fact that DSP's holding of the Security Deposit in September 2017 was neither wrongful nor unauthorized and Plaintiff does not allege otherwise. To the contrary, by its very terms Plaintiff (or Nitel)

provided the Security Deposit subject to the contractual terms it **agreed** to in the Sublease and; thus, the Security Deposit was rightfully being held by Rocket Fuel with Nitel's authorization. Again, Plaintiff is not permitted to use events and actions that occurred in March of 2019 to paint a picture of the way things were in September of 2017 when Defendant Saunders was winding–up his time with Sizmek.

The timing of the events of the Sublease and the Sweep are critical to the analysis here as it relates to Defendant Saunders. In applying the elements necessary to establish a claim for conversion a nexus needs to exist between the alleged conversion events at the time which the conversion tort occurred—something needs to trigger the tort here. *Daniels*, 604 F. Supp at 696. This likely is the reason a "demand" requirement in the case law is included, it sets–up the next element of "wrongfully exercising control over another's property." *See generally Evergreen Marine Corp.*, 2003 WL 1127902, at *7. In September 2017, neither Sizmek nor Defendant Saunders were wrongfully holding without authorization Nitel's property and no demand for the Security Deposit was made of Sizmek or Defendant Saunders at that time. Even if demand was not necessary, there still needs to be some act whereby one party improperly dispossess another party of their property in order to satisfy the fourth element of a claim for conversion. That is not and cannot be the case here with respect to Defendant Saunders. Defendant Saunders cannot, is not, has not, and never will be in a position to rightly or wrongfully exercise "and without authorization [] control, dominion, or ownership over the" Security Deposit. *Evergreen Marine Corp.*, 2003 WL 1127902, at *7.

At all times relevant to the assertions in the Amended Complaint that involved Defendant Saunders the Security Deposit was rightfully held with Nitel's authorization and Nitel did not have the immediate right to the possession of the Security Deposit under the terms of the Sublease.

Simply, it cannot be the law that a party can be held responsible for conversion of funds after leaving the entity that was holding (properly and with authorization) the subject property simply because of another party's improper exercise of control (with knowledge of the nature of property it is controlling) over that subject property. The Security Deposit was given to Rocket Fuel and, by virtue of the Sizmek–Rocket Fuel Transaction, DSP in connection with the Sublease. Under those facts, until a demand for the Security Deposit was made, it actually was being held properly and with authorization by Nitel under the terms of the Sublease. Again, Plaintiff makes no allegation other than non-fact based leaps in logic that Defendant Saunders is somehow responsible for the Sweep just like, oddly enough—all the CFO's that followed him.

### 2. Defendant Saunders Did Not Actively Participate in the Sweep and is not the Party Exercising Control over the Security Deposit

To be clear, Defendant Saunders did not ***actively participate*** in (a) the Sublease and Security Deposit, because that was before the Sizmek–Rocket Fuel Transaction, or (b) the Sweep that occurred long after Defendant Saunders left Sizmek. He could not. He was not involved or he was long gone. He left Sizmek in September 2017 long before—18 months—the Sweep in March of 2019. And no matter how often Plaintiff uses some form of the phrase "active participation" in the Amended Complaint, which arguably is more of legal conclusion than a factual statement to begin with (*Bell Atl. Corp.*, 550 U.S. at 555), it does not actually allege or demonstrate acts or actions that would qualify as participation, needless to say active participation. Again, this infirmity[7] is addressed by Plaintiff by simply suing ***all*** the former CFO's hoping something attaches to one of them. Simply put, the Amended Complaint is completely void of any

---

[7] While this is not a fraud case, this type of "group pleading" should not be condoned. That is particularly true here, when "active participation" is a necessary consideration in elevating and determining the validity of the claim being asserted.

allegation that Defendant Saunders did or took any specific action—as opposed to was actively participating—concerning the Security Deposit during his final 3 weeks with Sizmek in September 2017—this is not a *Nat'l Acceptance Co.* scenario. The four elements of a conversion claim, as set forth above, are clear under Illinois law. Plaintiff attempts in Count III to add elements that just do not exist—once again painting with broad brush—to create a (false) narrative that shoehorns in new defendants like Defendant Saunders. Further, as addressed above, it cannot be the law that when DSP got the Security Deposit it, as Plaintiff seems to assert, automatically converted it at that point in time as a result of how it inherited the funds from Rocket Fuel through the Sizmek–Rocket Fuel Transaction—this assertion reflects a complete misunderstanding of the closing and post-closing efforts of large commercial transactions. Moreover, there was no a demand made for the Security Deposit in September 2017. Plaintiff did not make demand on DSP until December 2019 and on counsel to the Secured Lenders 2 years after the Sizmek bankruptcy in March of 2021. There was no wrongful and unauthorized control of the security in September 2017, the Security Deposit was willingly provided by Nitel to Rocket Fuel with authority for Rocket Fuel, and then DSP, hold such funds until the end of the lease or demand was made.

Plaintiff's own Amended Complaint as pled clearly and conspicuously identifies the party that is disposing them of their alleged right to the Security Depot despite them making demand on that party and, again, ***it is not Defendant Saunders***. Taking a step back for a moment, nothing in the Amended Complaint actually asserts Rocket Fuel originally segregated the Security Deposit properly—query why the Rocket Fuel CFO was not named when the complaint was amended (maybe the insurance tail was not long enough for them to be worthwhile?). Remember, Defendant Saunders was only with Sizmek for 3 weeks after the Sizmek–Rocket Fuel Transaction and it was a wind–down period as he transitioned to another job with another company and did nothing

related to the post-closing actions concerning the Sizmek–Rocket Fuel Transaction, which was being handled by others. And that is why the Amended Complaint makes no allegation that Defendant Saunders did anything related to or in connection with the Security Deposit—just that he, like others that followed until Sizmek's bankruptcy, was a CFO at some point in time. This extremely broad brush approach by Plaintiff with its inclusion of all of the former CFO's of Sizmek (not Rocket Fuel) and a "let's see what sticks" attitude should not be condoned.

Plaintiff again failed to establish the fourth element necessary for its conversion claim as Defendant Saunders is not the party "wrongfully and without authorization assumed control, dominion, or ownership over" the Security Deposit.

For the foregoing reasons, Count III of the Amended Complaint asserting conversion of the Security Deposit against Defendant Saunders should be dismissed with prejudice. No set of facts cannot exist to permit this claim to stand against Defendant Saunders as he is not, has not, and could never exercise control over or dispossess Plaintiff of the Security Deposit; thus, he is not liable for conversion.

### III.   Count IV—Negligence—of the Amended Complaint Should be Dismissed as Against Defendant Saunders

Assuming, as we must, the allegations in the Amended Complaint as true, Plaintiff failed to establish a claim for negligence against Defendant Saunders.

#### A.   *Elements Necessary to Establish a Claim for Negligence* [8]

In order for a party "[t]o state a claim for negligence, [plaintiff] must allege that [defendant] owed it a duty of care." *See Fintec Group, Inc. v. U.S. Bank, N.A.*, Case No. 13-C-8076, 2014 WL

---

[8]   The negligence analysis provided in this Memorandum of Law is under Illinois law—the law governing the Sublease—but Defendant Saunders does not concede, and hereby reserves and preserves, his right to assert that the law of the State of Texas may apply as he was, at all times relevant to the Amended Complaint, a resident of Austin, Texas.

13

4784141, at *7 (N.D. Ill. Sept. 25, 2014) citing *Setera v. Nat'l City Bank,* No. 07 C 2978, 2008 WL 4425446, at *4 (N.D. Ill. Sept. 26, 2008). Courts in Illinois have explained, in injury related cases, that the "touchstone of [a] court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.,* 856 N.E.2d 1048, 1057 (Ill. 2006).

### B.     *Defendant Saunders Did Not Owe a Duty to Plaintiff*

Here, Defendant Saunders owed Plaintiff no duty of care. There can be no argument that can be made that Plaintiff and Defendant Saunders "stood in such a relationship" that Defendant Saunders owed any kind of duty of care to Plaintiff. *Marshall*, 856 N.E.2d at 1057. Plaintiff may argue that Sizmek owed it a duty of care[9], but that is not the same as Defendant Saunders owing Plaintiff a duty of care. And under these facts, the transitive property is not applied just because Defendant Saunders worked for Sizmek. Defendant Saunders may have owed a duty to Sizmek, his employer, not to Plaintiff.

### C.     *Plaintiff's Negligence Claim Is Duplicative of its Conversion Claim*

Courts may dismiss counts of a complaint if it is determined that the counts are duplicative of one another. *See DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010) (noting that duplicative counts are properly dismissed and that counts are duplicative if "based on the same operative facts and the same injury"); *see also Maglaya v. Kumiga*, Case No. 14-cv-3619, 2015 WL 4624884, at *10 (N.D. Ill. Aug. 3, 2015) (dismissing conversion and trespass claims as

---

[9] The Court, under Rule 201 of the Federal Rules of Evidence, can take judicial notice of the fact that Plaintiff, interestingly enough, filed three claims (Claim Nos. 63, 66, and &75) against Sizmek all of which addressed the same claim for the Security Deposit that they are now seek against all of the defendants in the above–captioned matter. Plaintiff knew when it filed those claims in the Sizmek bankruptcy, and when it filed its original complaint against the Secured Lenders, and it knows now that the parties they just included by the Amended Complaint owed no duty of care to Plaintiff.

duplicative because they "involve the same set of operative facts, allege the same injury, and . . . are themselves indistinct").

Here, it is clear that Count III and Count IV of the Amended Complaint, as pled, are based on the same set of operative facts and result in the same injury. Therefore, Count IV of the Amended Complaint should be dismissed as duplicative of Count III.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant Saunders respectfully requests that (i) Counts III and IV of the Amended Complaint be dismissed with prejudice as against Defendant Saunders and (ii) for such other and further relief that the Court may deem just and proper.

Dated: New York, New York
April 7, 2022

Respectfully Submitted,

**MORRISON COHEN LLP**

By: */s/ Heath D. Rosenblat*
Heath D. Rosenblat, Esq.
909 Third Avenue
New York, New York  10022
Telephone: (212) 735-8600
Facsimile:  (917) 522-3157
E-mails:    hrosenblat@morrisoncohen.com

*Counsel for Defendant Ken Saunders*