UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re:                                              :        Chapter 7
                                                    :
SIZMEK INC., *et al*,                               :        Bankr. Case No. 19-10971 (DSJ)
                                                    :
              Debtors.                              :        (Joint Administered)
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
---------------------------------------------------------X
                                                    :
10FN, INC.,                                          :
                                                    :
              Plaintiff,                             :
                                                    :
                                                    :
                                                    :
       - against -                                  :        Adv. Proc. No. 21-01160 (DSJ)
                                                    :
CERBERUS BUSINESS FINANCE, LLC,                      :        District Court Case No.
PEPI CAPITAL, L.P., KEN SAUNDERS,                    :        1:21-cv-05996-VEC
ANDREW BRONSTEIN, SASCHA                             :
WITTLER, and MARK GRETHER,                           :
                                                    :        ORAL ARGUMENT REQUESTED
                                                    :
              Defendants                             :
---------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CERBERUS BUSINESS
FINANCE, LLC AND PEPI CAPITAL L.P.'S MOTION TO DISMISS 10FN, INC'S
AMENDED COMPLAINT AND DEFENDANTS MARK GRETHER & SASCHA
WITTLER'S CROSS CLAIMS**

SCHULTE ROTH & ZABEL LLP

Andrew D. Gladstein
William H. Gussman, Jr.
John Mixon
919 Third Avenue
New York, New York 10022
Telephone (212) 756-2000
Facsimile (212) 593-5955

*Attorneys for Defendants Cerberus Business
Finance, LLC and Pepi Capital, L.P.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................1

BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................3

ARGUMENT .........................................................................................5

    I.     THE COMPLAINT FAILS TO PLEAD A VIABLE CAUSE OF ACTION FOR CONVERSION ...........................................................6

          A.    The Amended Complaint Does Not Allege Nitel's Immediate Possessory Interest In Sizmek's General Accounts, Nor Unauthorized Actions By The Secured Lenders ..................................................................7

          B.    The Commingled Security Deposit Is Not Traceable ..............10

    II.    THE CLAIM FOR UNJUST ENRICHMENT FAILS .......................11

    III.   THE CROSS-CLAIMS FOR INDEMNIFICATION AND CONTRIBUTION ARE MERITLESS ................................................13

          A.    The Cross Claimants Have Not Alleged The Existence Of A Duty Owed To Them By Cerberus ...........................................14

          B.    The Indemnification Claim Must Be Dismissed Because The Cross Claimants Are Alleged Wrongdoers ......................15

          C.    Contribution is Unavailable Where The Damages Sought Are Purely Economic in Nature .................................................16

CONCLUSION .....................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ................................................................15

*In re Am. Crop Servs., Inc.,*
    258 B.R. 699 (W.D. Tenn. 2001).................................................................8, 9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................6

*ATSI Commc'ns v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007).....................................................................6

*Auguston v. Spry,*
    282 A.D.2d 489 (2d Dep't 2001) .............................................................11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................5, 6

*Bd of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,*
    71 N.Y.2d 21 (1987)...........................................................................17

*Children's Corner Learning Ctr. v. A. Miranda Contracting Corp.,*
    64 A.D.3d 318 (1st Dep't 2009) .............................................................17

*Cirrincione v. Johnson,*
    184 Ill. 2d 109, 703 N.E.2d 67 (1998).....................................................7

*Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,*
    70 N.Y.2d 382 (1987).........................................................................11

*Columbia Marine Serv., Inc. v. Reffet Ltd.,*
    861 F.2d 18 (2d Cir. 1988)...................................................................10

*Cont'l Cap. Grp., LLC v. Lazar Builders, LLC,*
    No. 507817/2014,
    2015 WL 4778341 (Sup. Ct. Kings Cnty. Aug. 14, 2015) ....................................10

*D'Amour v. Ohrenstein & Brown,*
    17 Misc. 3d 1130(A) (table),
    2007 WL 4126386 (Sup. Ct. N.Y. Cnty. 2007) ..............................................10

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
    837 F. Supp. 2d 162 (S.D.N.Y. 2011).......................................................11

*Fashion Shop LLC v. Virtual Sales Grp. Corp.*,
  525 F. Supp. 2d 436 (S.D.N.Y. 2007),
  *aff'd*, 323 F. App'x 96 (2d Cir. 2009)............................................................14

*Fleurentin v. McDowell*,
  No. 05-CV-4274-ARR-CLP,
  2009 WL 2969686 (E.D.N.Y. Sept. 16, 2009) ...............................................7

*Gemma Power Sys., LLC v. Exelon W. Medway II, LLC*,
  No. 19-Civ-00705 (CM),
  2019 WL 3162088 (S.D.N.Y. July 1, 2019) ...................................................12

*Georgia Malone & Co. v. Rieder*,
  19 N.Y.3d 511 (2012) ...............................................................................12, 13

*Giardini v. Settanni*,
  159 A.D.3d 874 (2d Dep't 2018) ....................................................................7

*Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture*,
  No. 06 Civ. 181 (GBD),
  2007 WL 2405689 (S.D.N.Y. Aug. 24, 2007)............................................14, 18

*Katz v. Belmont Nat'l Bank of Chi.*,
  112 Ill. 2d 64, 491 N.E.2d 1157 (1986).......................................................8, 9

*Luong v. Ha The Luong*,
  67 Misc. 3d 1210(A) (table),
  2020 WL 2086069 (Sup. Ct. N.Y. Cnty. 2020) .............................................10

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ...................................................................................12

*Marine Midland Bank v. Russo Produce Co.*,
  65 A.D.2d 950 (4th Dep't 1978),
  *modified on other grounds*,
  50 N.Y.2d 31 (1980) .....................................................................................10

*Micro Bio–Medics, Inc. v. Westchester Med. Ctr.*,
  6 Misc. 3d 1003(A) (table),
  2004 WL 3048850 (Sup. Ct. Westchester Cnty. 2004) ..............................12

*N. Tr. Co. v. Chase Manhattan Bank*,
  582 F. Supp. 1380 (S.D.N.Y.),
  *aff'd,* 748 F.2d 803 (2d Cir. 1984).................................................................10

*Ohio Players, Inc. v. Polygram Recs., Inc.*,
  No. 99 Civ. 33,
  2000 WL 1616999 (S.D.N.Y. Oct. 27, 2000)..................................................11

iii

*Republic of Haiti v. Duvalier*,
   211 A.D.2d 379 (1st Dep't 1995) ..........................................................................7

*Rockefeller Univ. v. Tishman Constr. Corp. of N.Y.*,
   232 A.D.2d 155 (1st Dep't 1996) ........................................................................16

*Rogath v. Koegel*,
   No. 96-CV-8729 (DAB),
   1998 WL 695668 (S.D.N.Y. Oct. 6, 1998) ..........................................................10

*Rogers v. Westfalia Associated Techs., Inc.*,
   485 F. Supp. 2d 121 (N.D.N.Y. 2007) .................................................................15

*Seghers v. Thompson*,
   No. 06-CIV-308(RMB)(KNF),
   2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006) ........................................................6

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.*,
   468 F. Supp. 2d 508 (S.D.N.Y.2006),
   *aff'd,*737 F.3d 166 (2d Cir. 2013) .....................................................................15

*Sperry v. Crompton Corp.*,
   8 N.Y.3d 204 (2007) ...........................................................................................12

*Tchrs. Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship*,
   681 F. Supp. 2d 501 (S.D.N.Y. 2010),
   *aff'd*, 481 F. App'x 686 (2d Cir. 2012) ...............................................................12

*In re Thebus*,
   108 Ill. 2d 255, 483 N.E.2d 1258 (1985) ..............................................................7

*Thyroff v. Nationwide Mut. Ins. Co.*,
   460 F.3d 400 (2d Cir. 2006) ..................................................................................7

*Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*,
   307 A.D.2d 891 (1st Dep't 2003) ...................................................................16, 18

*Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*,
   109 A.D.2d 449 (1st Dep't 1985) ........................................................................16

*United Sys. Assocs. v. Norstar Bank Upstate N.Y.*,
   171 A.D.2d 922 (3d Dep't 1991) .........................................................................11

*Vigilant Ins. Co. of Am. v. Hous. Auth.* ,
   87 N.Y.2d 36 (1995) .............................................................................................7

*Walden Terrace, Inc. v. Broadwall Mgmt. Corp.*,
   213 A.D.2d 630 (2d Dep't 1995) .........................................................................11

iv

*W. States Ins. Co. v. Louis E. Olivero & Assocs.*,
   283 Ill. App. 3d 307, 670 N.E.2d 333 (1996) ..........................................................................7

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 5

**Statutes**

N.Y. C.P.L.R. § 1401 ("CPLR") ...................................................................................14, 17

Defendants Cerberus Business Finance, LLC ("Cerberus") and Pepi Capital L.P. ("Pepi," and together with Cerberus, the "Secured Lenders"), by and through their attorneys, Schulte Roth & Zabel, LLP, submit this Memorandum of Law in support of their Motion to Dismiss (i) 10FN, Inc. ("Nitel")'s Amended Complaint and (ii) Defendants Mark Grether's ("Grether") and Sascha Wittler's ("Wittler," and together with Grether, the "Cross Claimants") cross claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Amended Complaint constitutes a stunning effort to hold a company's secured lenders liable for the loss by the company of a third-party's security deposit. The salient facts are straightforward. In 2016, Nitel subleased commercial space from Rocket Fuel Inc. ("Rocket Fuel"), and provided Rocket Fuel with a security deposit. Rocket Fuel was acquired by Sizmek Inc. ("Sizmek") in 2017, and, as alleged, either Rocket Fuel or Sizmek (or both) failed to hold Nitel's security deposit in a segregated account, as they were allegedly obligated to do. Instead, Rocket Fuel or Sizmek comingled Nitel's security deposit with general funds that Sizmek eventually posted as collateral for a loan from the Secured Lenders. In 2019, three years after Nitel made the deposit, Sizmek defaulted on the loan from the Secured Lenders, filed for bankruptcy, and failed to return Nitel's security deposit.

Nitel seeks to hold the Secured Lenders, which were not parties to the sublease and which plainly owed no duties on account of the sublease, liable for Sizmek's own failure to repay Nitel's security deposit. Nitel's decision to sue the Secured Lenders, and not Sizmek, was a strategic one, as Nitel apparently believes it will fare better with improper claims against non-parties to the sublease than with meritorious claims against Sizmek in Sizmek's bankruptcy case. Nitel's effort to find a solvent defendant, however, is misguided because its purported claims

1

against the Secured Lenders, for conversion and unjust enrichment, fail to state a claim as a matter of law.

*First,* the claim for conversion must be dismissed because Nitel cannot plead that it had an immediate right of possession of the funds swept by the Secured Lenders in 2019 or that the Secured Lenders swept Sizmek's accounts without authority.  The Complaint concedes that the security deposit at issue was commingled with general Sizmek accounts *years* before those accounts were swept by the Secured Lenders, and that the Secured Lenders had contractual authority over the contents of Sizmek's general accounts.  Accordingly, even if Nitel had a viable breach of contract claim against Sizmek arising out of Sizmek's failure, in breach of the sublease, to hold the security deposit in trust, it may not transform that claim into a conversion claim against the Secured Lenders.  Similarly, because the security deposit was allegedly commingled years before Sizmek's accounts were swept, there is no way to trace the funds and, as a result, the claim for conversion cannot stand.

*Second,* Nitel's unjust enrichment claim is equally infirm, both because its rights are indisputably covered by a written agreement with Sizmek (thereby precluding any quasi-contractual claim), and because Nitel has failed to allege the existence of a "close relationship" with the Secured Lenders (as is required for an unjust enrichment claim).  Nitel has also failed to allege that the Secured Lenders were enriched at Nitel's expense, given that Nitel's property was allegedly converted years earlier, by virtue of Sizmek's failure to hold Nitel's property in a segregated account, rendering Nitel an unsecured creditor of Sizmek with rights indisputably subordinate to the Secured Lenders.

*Finally*, the cross claims asserted by Sizmek's officers are a regurgitation of third-party claims that Judge Daniels has already rejected in a related matter.  At their core, the cross

claims—for common law contribution and indemnification—are premised on the conclusory assertion that Cerberus somehow induced Sizmek's officers into comingling Nitel's assets.  That is nonsense.  And, in any event: (i) Cebrerus owed no duty to Sizmek's officers arising out of a sublease it was not a party to; (ii) as alleged wrongdoers, Sizmek's officers cannot seek indemnification; and (iii) a contribution claim is unavailable where, as here, the damages sought—the repayment of the amount of the lost security deposit—are purely economic in nature.

**BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Nitel's Sublease and the Secured Lenders' Financing Agreement

Nitel subleased commercial property in Chicago from Sizmek in 2016 pursuant to a sublease between Nitel and Rocket Fuel.  (Compl. ¶ 12.)  Nitel alleges that it paid Rocket Fuel a security deposit in the amount of $271,092.87, and that Rocket Fuel was obligated pursuant to Illinois law to segregate and hold that deposit in trust for Nitel's benefit.  Rocket Fuel was thereafter acquired by Sizmek in 2017.  (*Id.*  ¶ 15.)

The Secured Lenders have no alleged relationship with Nitel at all.  Instead, they were Sizmek's secured lenders pursuant to a September 2017 financing agreement (the "Financing Agreement).  Exhibit 1.  Specifically, pursuant to the Financing Agreement, the Secured Lenders provided a term loan and revolving loan facility to Sizmek.  (Compl. ¶ 17.)  In exchange, the Secured Lenders received rights to Sizmek's collateral, including its cash and bank accounts.  In the event of default under the terms of the Financing Agreement, the Secured Lenders were authorized to sweep the assets in the subject accounts.  (*Id.* ¶ 18.)

On March 25, 2019, following a breach by Sizmek of the Financing Agreement, the Secured Lenders exercised their rights under that agreement by sweeping Sizmek's accounts.

(Compl. ¶ 19.)  Sizmek filed a Chapter 11 bankruptcy petition on March 29, 2019.  *In re Sizmek,*

*Inc.*, No. 1:19-BK-10971 (Bankr. S.D.N.Y. Mar. 29, 2019), Dkt. No. 1.

Nitel's Claims

        Nitel alleges that Sizmek was unable to return its security deposit following the 2019

bankruptcy, and asserts claims against the Secured Lenders for that failure.  (Compl. ¶ 37.)

Specifically, Nitel alleges that the Secured Lenders had knowledge that Nitel's security deposit

had been commingled on account of general allegations that the Secured Lenders "conducted due

diligence" on Sizmek from a 2017 refinancing of Sizmek through February 2019.[1]  (*Id.* ¶¶ 21-

25.)

        Notably, consistent with New York law holding that lenders owe no special duties,

Sizmek agreed in the Financing Agreement that the Secured Lenders had no duty to inspect the

collateral that was used to secure the loan, and that Secured Lenders would not be liable for any

action arising out of such purported duties.

> The Agents and their directors, officers, agents or employees shall
> not be liable for any action taken or omitted to be taken by them
> under or in connection with this Agreement….  Without limiting the
> generality of the foregoing, the Agents…(iv) shall not have any duty
> to…inspect the Collateral[2] or other property (including, without
> limitation, the books and records) of any Person.

---

[1] The Amended Complaint contends that Alvarez & Marsal ("A&M") provided reports to the
Secured Lenders "regarding the Debtor's subleases, including security deposits held by the
Debtors for the benefit of subleasees."  (Compl. ¶ 22.)  That is a gross exaggeration of the
content of the reports, in which Nitel's name is mentioned *not once.*  In reality, as Nitel fully
understands given its possession of the reports, buried within the hundreds of collective pages of
Sizmek financial analysis are less than a few oblique references to "deposits" or "Down
Payments Received."  The Amended Complaint does not allege that the A&M reports identified
in which accounts the security deposits were held, nor that they were being held in trust.

[2] "Collateral" is defined broadly in the Financing Agreement to include "all of the property and
assets" serving as security for the loan.

(Exhibit 1 at 10.03).

The Cross Claimants' Claims and the Prior Getty Action

On April 7, 2022, the Cross Claimants answered the Amended Complaint and filed cross claims against Cerberus for indemnification and contribution (the "Cross Claims").  (Dkt. Nos. 65, 66.)  The Cross Claimants assert that Cerberus should be liable for any judgment against them on the basis that Cerberus induced Sizmek to commingle Nitel's security deposit with Sizmek's general funds.  (*Id.* ¶¶ 85.)  The Cross Claims are merely a variation of those that Defendant Andrew Bronstein asserted against the Secured Lenders in *Getty Images (US) Inc. v. Bronstein et al.*, No. 1:19-CV-09804 (S.D.N.Y. Oct. 23, 2019), (hereinafter the "Getty Action"), Dkt. No. 47.

In the Getty Action, Getty Images (US) Inc. ("Getty") subleased commercial real estate from Sizmek, and similarly did not receive its security deposit back from Sizmek after Sizmek filed for bankruptcy.  After Getty sued Sizmek's officers for conversion of the security deposit in the Southern District of New York (*Getty Action*, Dkt. No. 1.), one of Sizmek's officers, Andrew Bronstein, asserted third-party claims against Cerberus for indemnification and contribution. Judge Daniels dismissed the third-party complaint from the bench, observing that the alleged conversion had occurred at the time Getty's security deposit was commingled—years before Cerberus swept Sizmek's accounts.  (*Getty Action*, Dkt. No. 108.)  Before ruling on Bronstein's motion for leave to replead the third-party complaint, Getty settled with Sizmek's officers. (*Getty Action*, Dkt. No. 129.)

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  In deciding whether a plaintiff has reached the facial plausibility threshold, a court must accept all well-pled factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See ATSI Commc'ns v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

New York law applies to the causes of action in the Amended Complaint and the Cross Claims.  New York's choice-of-law principles require the Court to apply the substantive tort law of the state with the "most significant relationship" to the parties and the relevant occurrence. *See Seghers v. Thompson*, No. 06-CIV-308(RMB)(KNF), 2006 WL 2807203, at *6 (S.D.N.Y. Sept. 27, 2006) (citation omitted).  Here, relevant conduct is primarily alleged to have occurred in New York.  Cerberus is located in New York.  The Secured Lenders contractual authority was exercised in New York, when the funds were swept, pursuant to a New York agreement.  Accordingly, New York law applies.

## I.    THE COMPLAINT FAILS TO PLEAD A VIABLE CAUSE OF ACTION FOR CONVERSION

The Amended Complaint alleges that Nitel's security deposit was commingled by Sizmek in general accounts long before it was swept by the Secured Lenders, but remarkably seeks to hold the Secured Lenders (and not Sizmek) liable for conversion of the security deposit. Nitel's conversion claim fails as a matter of law for two primary reasons.  First, Nitel did not have an immediate and possessory interest in the funds that were swept from Sizmek's general accounts after an event of default was declared because Sizmek failed to hold those funds in trust

6

in a segregated account.  Second, a cause of action for conversion cannot lie where, as here, the alleged proceeds were commingled and are therefore untraceable.

### A. The Amended Complaint Does Not Allege Nitel's Immediate Possessory Interest In Sizmek's General Accounts, Nor Unauthorized Actions By The Secured Lenders

Under New York law, "'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.,* 87 N.Y.2d 36, 44 (1995)).  To state a claim of conversion, the plaintiff must allege "(1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right." *Giardini v. Settanni*, 159 A.D.3d 874, 875 (2d Dep't 2018) (citations omitted). Moreover, if the property is money, "it must be specifically identifiable and subject to an obligation to be returned or otherwise treated in a particular manner." *Fleurentin v. McDowell,* No. 05-CV-4274-ARR-CLP, 2009 WL 2969686, at *7 (E.D.N.Y. Sept. 16, 2009) (citing *Republic of Haiti v. Duvalier,* 211 A.D.2d 379, 626 N.Y.S.2d 472 (1st Dep't 1995)).[3]

Here, Nitel cannot maintain a cause of action against the Secured Lenders for conversion because, as a matter of law, it cannot satisfy the first two elements of a conversion claim—

---

[3] Illinois law is substantively the same.  In order to state a claim for conversion under Illinois law, a plaintiff must allege the following elements: (1) that it has a right to the property; (2) that it has an absolute and unconditional right to the immediate possession of the property; (3) that it made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion or ownership over the property. *See Cirrincione v. Johnson,* 184 Ill. 2d 109, __- 703 N.E.2d 67, 70 (1998); *In re Thebus,* 108 Ill. 2d 255, ---- 483 N.E.2d 1258, 1260 (1985); *W. States Ins. Co. v. Louis E. Olivero & Assocs.,* 283 Ill. App. 3d 307, ___, 670 N.E.2d 333, 335 (1996).

namely, that it had legal ownership or an immediate right of possession to the security deposit or that the Secured Lenders exercised unauthorized dominion over the security deposit.  That is because, on the face of the Amended Complaint, when the Secured Lenders exercised their rights over Sizmek's accounts, they exercised authorized dominion over property belonging not to Nitel, but to Sizmek.

*Katz v. Belmont National Bank of Chicago*, 112 Ill. 2d 64, 491 N.E.2d 1157 (1986) is instructive.  In that case, the plaintiff, a business owner, brought a conversion claim against the defendant bank to recover funds that the plaintiff's payroll service provider deposited with the bank for the benefit of plaintiff's employees. *See id.* at 65-66.  After the payroll service provider declared bankruptcy, the plaintiff sued the bank for the funds deposited.  *See id.*  In dismissing the conversion claim, the *Katz* court held that the plaintiff failed to allege that it had an "absolute and unconditional right to immediate possession of the property" because it was the payroll company, and not the plaintiff, that had a creditor-debtor relationship with the defendant.  *See id.* at 68-69.  Thus, only the payroll company, as creditor to its own account with the defendant, had an immediate right to possession of the funds and was the only party that could assert a conversion claim against the defendant.  *See id.* at 69.

The court in *In re American Crop Services, Inc.,* 258 B.R. 699 (W.D. Tenn. 2001) reached the same result when confronted with facts directly analogous to the instant dispute. There, Harris Trust and Savings Bank ("Harris Bank") was a lender to the debtor, American Crop Services ("ACS").  Harris Bank held a security interest in ACS' assets as collateral, including its bank accounts.  *See id.* at 701.  The plaintiff, Novartis, entered into an agreement with ACS governing the sale of Novartis products, and proceeds from the sales were deposited into an account at Harris Bank.  *See id.* at 701-02.  After ACS defaulted on its loan from Harris

Bank and Harris Bank swept ACS' accounts, Novartis brought an adversary proceeding against Harris Bank to recover payments it received as a result of sales of Novartis products by ACS. *See id.* at 702-03.

In rejecting Novartis' conversion claim against Harris Bank, the court held that Novartis could not assert a claim against funds that had already been transferred to Harris Bank where Novartis had "not alleged the existence of any contractual or other relationship between itself and Harris Bank…." *See id.* at 704-05.

> The Debtor allegedly placed the money it received from Farmers Gin in the Harris Account. At that point, as a matter of law, the Debtor and Harris Bank established the relationship of creditor and debtor. "As a rule, when money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit; and to that extent, the depositor becomes a creditor." *Katz v. Belmont Nat'l Bank of Chicago,* 112 Ill.2d 64, 96 Ill.Dec. 697, 491 N.E.2d 1157, 1159 (1986) (citations omitted). Importantly, as the Illinois Supreme Court found in *Katz,* "the only possible right to immediate possession of the property, absolute and unconditional, [is] on [the Debtor's] part." *Id.*

*See id.* at 704.  Applied here, Nitel cannot maintain that it has a "right to immediate possession of the property" because that property, which was commingled and converted by Sizmek into its general accounts, became Sizmek's property.  Accordingly, any claim for conversion would have to be asserted by Sizmek.  Of course, any such claim would fail.

Nor can Nitel maintain that the Secured Lenders actions were "unauthorized."  To the contrary, Nitel concedes that the Secured Lenders had contractual authority to sweep Sizmek's accounts.  Nitel submits that the Secured Lenders should not have had the authority to sweep its security deposit.  That argument would have merit if Sizmek had maintained Nitel's security deposit in a segregated account, in trust for Nitel.  It did not, creating a cause of action against Sizmek, not the Secured Lenders.

9

**B.      The Commingled Security Deposit Is Not Traceable**

Nitel's conversion claim fails for an additional, separate reason.  Under New York law,

"a mere claim that a sum of money, not specifically identifiable, has been paid out of general

funds by an alleged debtor to a third party, will not support an action against the third party for

conversion." *Columbia Marine Serv., Inc. v. Reffet Ltd.*, 861 F.2d 18, 23 (2d Cir. 1988) (citing

*Marine Midland Bank v. Russo Produce Co.*, 65 A.D.2d 950, 952 (4th Dep't 1978), *modified on

other grounds*, 50 N.Y.2d 31 (1980); *N. Tr. Co. v. Chase Manhattan Bank*, 582 F. Supp. 1380,

1386 (S.D.N.Y.), *aff'd*, 748 F.2d 803 (2d Cir. 1984).  When money is deposited in a business's

general account and thereby commingled with the business's other funds, courts generally find

that the money is not "specifically identifiable for purposes of a conversion claim." *Cont'l Cap.

Grp., LLC v. Lazar Builders, LLC*, No. 507817/2014, 2015 WL 4778341, at *4 (Sup. Ct. Kings

Cnty. Aug. 14, 2015) (trial order) (granting plaintiff's motion to dismiss conversion counterclaim

where only inference was that the funds were deposited in the plaintiff's general account and

commingled) (quoting *D'Amour v. Ohrenstein & Brown*, 17 Misc. 3d 1130(A) (table), 2007 WL

4126386 , at *13 (Sup. Ct. N.Y. Cnty. 2007)); *see also Luong v. Ha The Luong*, 67 Misc. 3d

1210(A) (table), 2020 WL 2086069 (Sup. Ct. N.Y. Cnty. , 2020) ("To state a claim for

conversion of money, the complaint must describe 'a specific, identifiable fund and an obligation

to return or otherwise treat in a particular manner the specific fund in question.'") (citation

omitted).

The Amended Complaint concedes that Nitel's security deposit was commingled with

Sizmek's general accounts long before the alleged sweep by the Secured Lenders.  It is therefore

impossible to identify the funds which Nitel is seeking to recover, precisely because those funds

were not segregated and held in trust.  *See Rogath v. Koegel*, No. 96-CV-8729 (DAB), 1998 WL

695668, at *3-4 (S.D.N.Y. Oct. 6, 1998) (noting the fact that the relevant funds traveled through

"numerous general commingled funds accounts" as a basis to find that the funds were not

"specifically identifiable" and dismissing plaintiff's conversion claim).

For example, in *Auguston v. Spry*, 282 A.D.2d 489, 489-90 (2d Dep't 2001), the plaintiff

investor paid the defendant, a director of a company, $200,000 as a capital investment in return

for a 15% share in the company.  Upon discovering both that the company was insolvent and that

the defendant made material misrepresentations in connection with the investment, the plaintiff

asserted a claim for conversion of the $200,000 capital investment.  *See id.* at 490-91.  The court

dismissed the claim: "[the plaintiff] allege[d] that his money was to be commingled into the

corporation's capital. As commingled money, his money was incapable of being converted." *Id.*

at 491 (citing *Walden Terrace, Inc. v. Broadwall Mgmt. Corp.*, 213 A.D.3d 630 (2d Dep't 1995);

*United Sys. Assocs. v. Norstar Bank Upstate N.Y.*, 171 A.D.2d 922 (3d Dep't 1991)).  The same

result follows here.

## II.   THE CLAIM FOR UNJUST ENRICHMENT FAILS

To state a claim for unjust enrichment, a plaintiff must establish that (1) the opposing

party was enriched, (2) the enrichment came at the plaintiff's expense, and (3) it contravenes

equity and good conscience to allow the opposing party to retain that which the plaintiff seeks to

recover.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162,

202 (S.D.N.Y. 2011).  Unjust enrichment is a quasi-contractual claim that "ordinarily can be

maintained only in the absence of a valid, enforceable contract." *Ohio Players, Inc. v. Polygram*

*Recs., Inc.,* No. 99 Civ. 33, 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000); *accord Clark–*

*Fitzpatrick, Inc. v. Long Island R.R. Co.,*  70 N.Y.2d 382, 389 (1987) ("It is impermissible ... to

seek damages in an action sounding in quasi contract where the suing party has fully performed

on a valid written agreement, the existence of which is undisputed, and the scope of which

11

clearly covers the dispute between the parties."). "That principle applies even where 'the party seeking to dismiss the claim is not a party to the contract.'" *Tchrs. Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship,* 681 F. Supp. 2d 501, 511 (S.D.N.Y. 2010), *aff'd*, 481 F. App'x 686 (2d Cir. 2012) (citing *Micro Bio–Medics, Inc. v. Westchester Med. Ctr.*, 6 Misc. 3d 1003(A) (table), 2004 WL 3048850 (Sup. Ct. Westchester Cnty. 2004)).

Nitel's unjust enrichment claim should be dismissed because its rights with respect to the security deposit at issue are governed by a written sublease agreement.  Sizmek was obligated to return Nitel's security deposit under the terms of that agreement, and it failed to do so.  Nitel made the strategic choice not to assert a straightforward breach of contract claim against Sizmek in Sizmek's bankruptcy, but that does not somehow create a right to bring an unjust enrichment claim in this proceeding.  *See Gemma Power Sys., LLC  v. Exelon W. Medway II, LLC*, No. 19-Civ.-00705(CM), 2019 WL 3162088, at *5 (S.D.N.Y. July 1, 2019) ("where a valid contract governs the subject matter of a plaintiff's claims, the plaintiff may not recover in quasi contract, and it is appropriate to dismiss the claims sounding in quasi contract.")

The Amended Complaint also fails to allege the requisite connection between Nitel and the Secured Lenders.  "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007)); *see also Sperry*, 8 N.Y.3d at 209 (connection between purchaser of tires and producers of chemicals used in such tires "is simply to attenuated to support [an unjust enrichment claim]."); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517-18 (2012) (relationship between the parties was "too attenuated because they simply had no dealings with each other.").

Here, *no* relationship between Nitel and the Secured Lenders has been alleged at all, whether in privity or otherwise. Indeed, even if the Secured Lenders had knowledge of Nitel through their alleged diligence of Sizmek (they did not), mere knowledge is not enough to sustain an unjust enrichment claim. *See Georgia Malone* 19 N.Y.3d at 517 (stating that defendant's alleged knowledge that plaintiff prepared the diligence reports that defendant wrongfully obtained from the party plaintiff prepared them for was insufficient to support unjust enrichment claim).

Finally, given that the underpinning of a claim for unjust enrichment is the unfair result of allowing the defendant to retain that which plaintiff seeks to recover, Nitel has failed to raise an inference of any such unfairness. When the Secured Lenders swept Nitel's accounts, they acted pursuant to their contractual rights. For the reasons explained above, Plaintiff's security deposit, as alleged, was lost when Rocket Fuel or Sizmek failed to segregate and hold it in trust for Plaintiff and instead commingled the deposit with Sizmek's general accounts. As secured creditors, the Secured Lenders would have priority over Nitel's unsecured breach of contract claim. As a result, the Secured Lenders could not have benefitted at Plaintiff's expense.

## III.  THE CROSS-CLAIMS FOR INDEMNIFICATION AND CONTRIBUTION ARE MERITLESS

Defendants Mark Grether and Sascha Wittler bring Cross Claims against Cerberus for indemnification and contribution, even though Judge Daniels already dismissed similar claims from the bench in the Getty Action. (*Getty Action*, Dkt. No. 108.) In the Getty Action, a Sizmek officer claimed that Cerberus should have discovered that Sizmek had comingled a security deposit. Here, Grether and Wittler go a step further, brazenly claiming without any factual support that Cerberus "induced" Sizmek to comingle Nitel's security deposit. (Dkt. Nos. 65, 66, 85.) That allegation is plainly conclusory. Sizmek's former officers do not, because they

13

cannot, allege that Nitel's security deposit was ever segregated by Rocket Fuel or Sizmek at all. The Cross Claims remain infirm.

### A.    The Cross Claimants Have Not Alleged The Existence Of A Duty Owed To Them By Cerberus

In order to state a claim for indemnification or contribution, a plaintiff must allege sufficient facts to infer the existence and breach of a duty owed.  Specifically, CPLR § 1401 permits contribution claims between "two or more persons who are *subject to liability* for damages for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401 (emphasis added); *see also, Fashion Shop LLC v. Virtual Sales Grp. Corp.,* 525 F. Supp. 2d 436, 446 (S.D.N.Y. 2007) ("The critical requirement for a contribution claim under New York law is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought."), *aff'd*, 323 F. App'x 96 (2d Cir. 2009). Similarly, a cause of action for common-law indemnification can be sustained only if: "(1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." *Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture,* No. 06 Civ. 181 (GBD), 2007 WL 2405689, at *4 (S.D.N.Y. Aug. 24, 2007).

Here, the rights and obligations of Cerberus were reflected in the Financing Agreement. Cerberus owed no other duties to Sizmek or its officers, who now seek contribution and indemnification from it.  *See Highland Holdings,* 2007 WL 2405689, at *4 ("In this case, Highland fails to allege that Debtor owed it any independent duty separate and apart from Debtor's contractual obligations under the [applicable] Agreement.  Therefore, Highland has not sufficiently alleged a claim for common-law indemnification.") (citing *Rogers v. Westfalia Associated Techs., Inc.,* 485 F. Supp. 2d 121, 130 n. 18 (N.D.N.Y. 2007) (dismissing claims for

14

common-law indemnification and contribution because 'none of the parties c[ould] show a legal duty, independent of a contract, owed by [the alleged indemnitor]")).

What's more, the only agreement to which Cerberus was a party—the Financing Agreement—was not only entirely unrelated to the sublease, it explicitly disclaimed any duty on the part of Cerberus to inspect the collateral used to secure the loan to Sizmek under the Financing Agreement.  (Ex. 1, at 129-130.)  "[A]bsent a special relationship between the parties, no duty is owed to the public at large or to those outside the class of people entitled to expect the actor's due care to them."  *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 533 (S.D.N.Y.2006), *aff'd,* 737 F.3d 166 (2d Cir. 2013).

Finally, even without the exculpatory language of the Financing Agreement, a financial institution owes no duty of care to a borrower or its agents when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.  *See Abraham v. Am. Home Mortg. Servicing, Inc.,* 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) ("To the extent [Plaintiff] alleges Defendants breached some duty other than those contained in any contract she had with them, such a claim would also fail. It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.").

Because the Cross Claimants cannot allege that Cerberus owed a duty of care arising out of the sublease or security deposit, their claims for indemnification and contribution must be dismissed.

### B.  The Indemnification Claim Must Be Dismissed Because The Cross Claimants Are Alleged Wrongdoers

The Cross Claimants' claim for common law indemnification against Cerberus fails for the additional reason that New York law does not permit defendants like Grether and Wittler,

who are directly implicated in the alleged wrongdoing, to assert a cause of action for indemnification.  "Indemnity involves an attempt to shift the entire loss from one who is compelled to pay for a loss, without regard to his own fault, to another party who should more properly bear responsibility for that loss because it was the actual wrongdoer."  *Trump Vill. Section 3 v. N.Y.S. Hous. Fin. Agency*, 307 A.D.2d 891, 895 (1st Dep't 2003) (quoting *Trs. of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 451 (1st Dep't 1985).  As a result, New York courts have consistently held that a party who has participated to some degree in the wrongdoing cannot receive the benefit of the doctrine of common law or implied indemnity.  See *Trump Vill.*, 307 A.D.2d at 895 ("[s]ince the predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of this doctrine.") (quoting *Trs. of Columbia Univ.*, 109 A.D.2d at 453); *see also, Rockefeller Univ. v. Tishman Constr. Corp. of N.Y.*, 232 A.D.2d 155 (1st Dep't 1996).

Here, the Third-Party Complaint provides absolutely no basis for indemnification, particularly in the face of the Cross Claimants' involvement in the alleged wrongdoing. Accordingly, since "liability against [the Cross Claimants] would be based upon [their] own participation in the acts giving rise to the loss, that is, as[ ] actual wrongdoer[s], . . . [the Cross Claimants are] precluded from recovery…on the basis of common-law indemnity."  *Trs. of Columbia Univ.*, 109 A.D.2d at 453-54.

### C.  Contribution is Unavailable Where The Damages Sought Are Purely Economic in Nature

Even if the Cross Claimants had alleged a cognizable duty, it would still not save their contribution claims.  CPLR 1401 requires that a plaintiff allege "injury to property or wrongful death" in order to claim contribution.  It is now axiomatic that "purely economic loss resulting

16

from a breach of contract does not constitute 'injury to property.'" *Children's Corner Learning Ctr. v. A. Miranda Contracting Corp*., 64 A.D.3d 318, 323–24 (1st Dep't 2009) (citing *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 26 (1987). That is because, as the Court of Appeals has stated, allowing the apportionment of liability where the alleged loss is purely economic "would not only be at odds with the statute's legislative history, but also do violence to settled principles of contract law which limit a contracting party's liability to those damages that are reasonably foreseeable at the time the contract is formed." *Bd. of Educ. of Hudson*, 71 N.Y.2d at 28 . As a result, where "the underlying claim seeks purely economic damages, a claim for common-law contribution is not available." *Children's Corner*, 64 A.D.3d at 323.

Here, there is no question that the damages sought by Nitel—the value of the security deposit allegedly lost—are purely economic in nature. Had Sizmek survived bankruptcy, Nitel would have sought the return of the security deposit pursuant to the terms of the sublease between Nitel and Sizmek. But the bankruptcy prevented that outcome, and so Nitel has strategically asserted tort claims against Sizmek's officers directly, instead. That strategic choice has no impact on the contribution analysis, however. "[T]he touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Children's Corner*, 64 A.D.3d at 324 (collecting cases). The Cross Claimants "may not seek contribution from [Cerberus] where the alleged 'tort' is essentially a breach of contract claim." *Trump Vill.*., 307 A.D.2d at 896. That is precisely the case here.

## **CONCLUSION**

For the reasons set forth above, the Amended Complaint and Cross-Claims should be dismissed with prejudice.

17

DATED:   New York, New York
            April 22, 2022

SCHULTE ROTH & ZABEL LLP


By:  /s/ Andrew D. Gladstein
       Andrew D. Gladstein
       William H. Gussman, Jr.
       John Mixon

919 Third Avenue
New York, New York  10022
(212) 849-7000
(212) 849-7100

*Attorneys for Defendant Cerberus Business Finance, LLC and Pepi Capital, L.P.*