USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/18/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
:
10FN, INC., :
:
Plaintiff, : 21-CV-5996 (VEC)
:
-against- : OPINION AND ORDER
:
CERBERUS BUSINESS FINANCE, LLC, and :
PEPI CAPITAL, L.P., KEN SAUNDERS, :
ANDREW BRONSTEIN, SASCHA WITTLER, :
and MARK GRETHER, :
:
Defendants. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This case arises from the sublease of office space in Chicago from Sizmek DSP, Inc. ("Sizmek" or the "Debtor"). Network Innovations d/b/a Nitel, Inc. (hereafter "Nitel"), bringing this case through its assignee 10FN, Inc., has sued Sizmek's secured creditors, Cerberus Business Finance LLC ("Cerberus") and PEPI Capital L.P. ("PEPI Capital") (together, the "Secured Lenders"), for alleged conversion and unjust enrichment because the Secured Lenders swept Nitel's security deposit from Sizmek's accounts shortly before Sizmek filed for bankruptcy protection. For good measure, Nitel has also sued four of Sizmek's former or current executives (collectively, the "Executives" or "Individual Defendants"), in their individual capacities, for conversion and negligence. *See generally* Am. Compl., Dkt. 28. The Secured Lenders and two of the Executives have moved to dismiss.[1] For the following reasons, Defendants' motions to dismiss the Amended Complaint are GRANTED in full.

---

[1] On April 7, 2022, Andrew Bronstein moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Bronstein Not. of Mot., Dkt. 62, and Ken Saunders moved to dismiss pursuant to Rule 12(b)(6), *see* Saunders Not. of Mot., Dkt. 67. Mark Grether and Sascha Wittler answered Plaintiff's Amended Complaint and cross-claimed against Cerberus for indemnity and contribution. *See* Grether Cross-Claims, Dkt. 65;

1

## BACKGROUND[2]

In 2016, Nitel subleased office space in Chicago, Illinois, from Rocket Fuel, Inc. ("Rocket Fuel"), the predecessor-in-interest to Sizmek. Amend. Compl. ¶¶ 12–14, Exs. A–B. Nitel provided Rocket Fuel $271,092.87 as a security deposit (the "Security Deposit") pursuant to a sublease (the "Sublease"); the Sublease is governed by Illinois law. *Id.* ¶ 15; Agr., Dkt. 28-1, at 6, ¶ 21.

During the term of the Sublease, Sizmek acquired Rocket Fuel. In connection with that acquisition, Sizmek borrowed money from the Secured Lenders; Sizmek gave the lenders first-priority liens on "substantially all [of] the Debtor's assets . . . ." Amend. Compl. ¶ 17. Sizmek also executed account control agreements authorizing the Secured Lenders to "control and sweep the Debtor's accounts, including accounts that contained the Security Deposit." *Id.* ¶ 18. According to Plaintiff, the Secured Lenders and all of the Individual Defendants knew that Plaintiff's Security Deposit was being held in accounts that could be swept by the Secured Lenders. *Id.* ¶¶ 25–26, 28–29.

Shortly before Sizmek filed for Chapter 11 bankruptcy on March 29, 2019,[3] the Secured Lenders swept all cash from its accounts, including some or all of Nitel's Security Deposit. *Id.* ¶¶ 19–20.

---

Wittler Cross-Claims, Dkt. 66. On April 22, 2022, the Secured Lenders moved to dismiss Plaintiff's Amended Complaint and Grether's and Wittler's cross-claims. *See* Secured Lenders Not. of Mot., Dkt. 70.

[2]   The well-pled facts as alleged in the Complaint are assumed to be true.

[3]   The Debtor's bankruptcy proceeding is ongoing. *See generally In re Sizmek Inc.*, No. 19-10971 (Bankr. S.D.N.Y. filed Mar. 29, 2019). On November 24, 2020, prior to Nitel filing its complaint against the Secured Lenders, the Debtor's bankruptcy was converted into a Chapter 7 liquidation. *See id.* at ECF No. 908.

Effective June 27, 2019, Sizmek rejected its sublease with Nitel. Pl. Mem. in Opp., Dkt. 73, at 3. After numerous unsuccessful attempts to obtain a refund of its Security Deposit,[4] on June 10, 2021, Nitel filed a complaint against the Secured Lenders in the bankruptcy court, asserting claims for conversion and unjust enrichment. *See generally* Ex. 1, Dkt. 5-2. This Court granted the Secured Lenders' motion to withdraw the bankruptcy reference as to Nitel's claim. Dkt. 17. On February 18, 2022, Plaintiff filed an Amended Complaint alleging conversion and unjust enrichment against the Secured Lenders and conversion and negligence against the Sizmek Executives. *See generally* Am. Compl.

The various motions to dismiss argue that the Court lacks subject-matter jurisdiction and that Plaintiff has failed to state a claim for conversion or negligence. The Court concludes that Plaintiff's Amended Complaint must be dismissed for failure to state a claim.[5]

## DISCUSSION

### I.     The Court Has Subject-Matter Jurisdiction Over Plaintiff's Action

The Court briefly addresses an Individual Defendant's argument that the Court lacks subject-matter jurisdiction over this adversary proceeding because Plaintiff has not alleged how its state law claims "could have any impact on" the Debtor's estate. Bronstein Mem. in Supp. of Mot., Dkt. 64, at 5.

Federal courts have subject-matter jurisdiction over all claims "arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. §

---

[4]     On August 30, 2019, Nitel filed a request for payment of an administrative claim in the Debtor's bankruptcy proceeding. *See* Pl. Mem. in Opp., Dkt. 73, Ex. B. In or about December 2019, Nitel demanded its Security Deposit from Sizmek; Sizmek told Nitel that the Secured Lenders had swept it. Amend. Compl., Dkt. 28, ¶ 36. On March 29, 2019, Nitel demanded its Security Deposit from the Secured Lenders. *Id.* ¶ 37, Ex. C. The Secured Lenders did not grant Nitel's request. *Id.* ¶ 37.

[5]     Because the Complaint fails to state a claim, the Court does not address the cross-claims of Individual Defendants.

1334(b).  For claims filed prior to a Chapter 11 plan confirmation, federal courts have "related to" jurisdiction "if the action's outcome might have any conceivable effect on the bankrupt estate."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018); *see also Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011).  An adversary proceeding has a "conceivable effect" on the estate if its outcome "could alter the debtor's rights, liabilities, options, or freedom of action" or could in any way have an "impact[ ] upon the handling and administration of the bankrupt estate."  *SPV Osus Ltd.*, 882 F.3d at 340 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)).

Although the Supreme Court has stated in dicta that bankruptcy jurisdiction may be broader for Chapter 11 reorganizations than Chapter 7 liquidations, *Celotex Corp.*, 514 U.S. at 310, there is currently "no distinct standard for 'related to' jurisdiction under Chapter 7 . . . in the caselaw," *Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ. 1914 (LBS), 2011 WL 3628852, at *6 (S.D.N.Y. Aug. 17, 2011); *see also In re PennySaver USA Publ'g, LLC*, 587 B.R. 43, 51–52 (Bankr. Del. 2018) (noting the lack of a distinct standard for Chapter 7 cases and applying the "conceivable effects" test to a Chapter 7 case because nothing about the adversary proceeding "implicate[d] characteristics unique to a Chapter 7 liquidation").  The Second Circuit has, however, applied the "conceivable effects" test to assess subject-matter jurisdiction over an adversary proceeding in a bankruptcy filed under the Securities Investor Protection Act that had been consolidated with a Chapter 7 proceeding.  *See SPV Osus Ltd.*, 882 F.3d at 341–42 (concluding that the district court had jurisdiction over a lawsuit between third parties because of its "conceivable effect" on the estate); *see also McCord v. Papantoniou*, 316 B.R. 113, 122 n.10 (E.D.N.Y. 2004) (noting that the distinction between Chapter 7 and Chapter 11 cases for

jurisdictional purposes is "immaterial"). The Court will, therefore, apply the "conceivable effects" test to this adversary proceeding.

Plaintiff's action falls squarely within this Court's subject-matter jurisdiction because if Plaintiff prevails against the Executives or the Secured Lenders, and recovers any of its Security Deposit, its administrative claim against the Debtor's estate will correspondingly diminish and the Secured Lenders' claim against the Debtor will correspondingly increase. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (concluding that disputes between third parties are sufficiently "related to" a bankruptcy if they "bring into question the very distribution of the estate's property"); *In re Ampal-Am. Israel Corp.*, No. 12-13689 (SMB), 2015 WL 5176395, at *8 (S.D.N.Y. Sept. 2, 2015) ("[C]ourts in this district have regularly held that if a resolution of an action between nondebtors would affect the amount of property available for distribution to the creditors of a bankruptcy estate . . . such civil proceeding will be regarded as related to the bankruptcy case.") (cleaned up). In addition, Plaintiff accuses the Executives of participating in the Debtor's alleged tortious acts; if that claim is successful, it could give rise to an indemnification claim by the Executives against the Debtor's estate. *See SPV Osus Ltd.*, 882 F.3d at 340 (concluding that the district court had jurisdiction over an adversary proceeding because, *inter alia*, the plaintiff alleged that defendants were joint tortfeasors with the debtors; "if proven, [the claim] would provide defendants with a putative contribution claim, to be asserted in the bankruptcy proceedings").

Finally, when determining whether it has subject matter jurisdiction, the Court need not conclude that Plaintiff is likely to succeed in its action; even the "potential alteration of the liabilities of the estate" is sufficient for jurisdiction to attach. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 323 (S.D.N.Y. 2003) (concluding that court had jurisdiction over litigation among

non-debtors because the dispute's outcome would potentially affect "the amount [in the estate] available for distribution to other creditors").

In short, the Court has subject matter jurisdiction over this adversary proceeding.

## II. New York Law Applies to Plaintiff's Claims

Although several of the parties, including Plaintiff, [6] argue that New York law applies to Plaintiff's claims for conversion and negligence, one Individual Defendant argues that Illinois law applies. *See* Saunders Mem. in Supp. of Mot., Dkt. 68, at 6, 13–14 (applying Illinois law); Saunders Reply, Dkt. 75, at 8–10 (arguing that Illinois law applies).[7]

Federal courts ordinarily apply a forum state's choice-of-law rules when determining which law applies to claims in an adversary proceeding. *See In re Coudert Bros. LLP*, 673 F.3d 180, 188 (2d Cir. 2012) (citing *In re Gaston & Snow*, 243 F. 3d 599, 608 (2d Cir. 2001) (holding that the forum state's choice-of-law rules apply absent a "significant federal policy . . . calling for the imposition of a federal conflicts rule")). Under New York law, courts must first determine whether there is any "actual conflict" between the laws of the relevant jurisdictions. *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). If so, in tort cases, New York "applies the law of the state with the most significant interest in the litigation." *Id.* (cleaned up).

---

[6] One Individual Defendant, the Secured Lenders, and Plaintiff all applied New York law in their briefing on the motions to dismiss. *See* Bronstein Mem. in Supp. of Mot., Dkt. 64, at 6–7; Secured Lenders Mem. in Supp. of Mot., Dkt. 71, at 7, 11; Pl. Mem. in Opp., Dkt. 73, at 10. Thus, Plaintiff, one Individual Defendant, and the Secured Lenders have all impliedly consented to the application of New York law. *See Green Tree Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 70 n.1 (2d Cir. 2017) ("The parties' briefs assume that New York law governs this case 'and such implied consent is, of course, sufficient to establish the applicable choice of law.'") (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

[7] Although that Defendant reserved the right to assert that Texas law applies to Plaintiff's negligence claim, Saunders Mem. in Supp. of Mot., Dkt. 68, at 13 n.8, the Court does not consider Texas law at this stage of the proceedings because no one argued that it does apply.

There is no conflict of law between New York and Illinois with respect to Plaintiff's conversion claim, as both jurisdictions require a plaintiff to allege unauthorized control over property in which the plaintiff has a possessory right.[8] *See Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 230 (S.D.N.Y. 2010) ("[T]here is no material difference between New York and Illinois conversion law . . . ."). The same holds true for negligence, as both New York and Illinois law require a plaintiff to allege that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury.[9] *See Katersky v. Am. Airlines, Inc.*, 314 F. Supp. 2d 275, 277 (S.D.N.Y. 2004) (declining to "delve into potential conflicts between New York and Illinois negligence law" because the existence of a genuine issue of material fact at summary judgment was "not affected by any possible difference in substantive law between the two states").

The Court, therefore, applies New York law to Plaintiff's claims for conversion and negligence.[10]

---

[8] Because the Court concludes that Plaintiff failed to allege that it has a possessory right in the Security Deposit, it need not consider whether there is a conflict between New York and Illinois law with respect to an executive's individual liability for his employer's conversion.

[9] Because the Court concludes that Plaintiff failed adequately to allege a duty owed to it by Sizmek, it need not consider whether there is a conflict between New York and Illinois law with respect to an executive's individual liability for his employer's negligence.

[10] Although the Sublease contains a choice-of-law provision pursuant to which the agreement "shall in all respects be governed by and construed in accordance with the laws of the State of Illinois," Agr., Dkt. 28-1, at 6, ¶ 21, that provision is not sufficiently broad to encompass Plaintiff's tort claims, *see Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir. 1996) (holding that "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties," and concluding that a provision stating that the agreement "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts" was too narrow to encompass a fraud claim arising incident to the agreement).

### III. Plaintiff Failed Adequately To Allege Any of Its Claims Against Defendants[11]

"To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Moreover, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

#### A. Plaintiff Failed to State a Claim for Conversion

Plaintiff's conversion claim rests entirely on its allegation that, under Illinois law, Sizmek was obligated to hold its Security Deposit in trust and that its failure to do so gives rise to a claim for conversion under New York law. *See* Pl. Mem. in Opp. at 11–12. Because Illinois law does

---

[11] Although Mark Grether and Sascha Wittler have not moved to dismiss the Amended Complaint, the Court dismisses the case against them *sua sponte* for failure to state a claim. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (noting that "[a] district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted" so long as plaintiff had "an opportunity to be heard") (citations omitted); *Yany's Garden LLC v. City of N.Y.*, 18-CV-2813(EK)(RML) 2021 WL 275423, at *2 (E.D.N.Y. Jan. 27, 2021) (dismissing an action for failure to state a claim with respect to a defendant who "ha[d] not moved to dismiss the action"); *Win Spark Trading Co. v. Century Bus. Credit Corp.*, Nos. 01 Civ. 6605(JSR), 01 Civ. 6603(JSR), 01 Civ. 6607(JSR), 2002 WL 1343763, at *2 & n.3 (S.D.N.Y. June 18, 2002) (dismissing amended complaints "in their entirety and as to all defendants" even though "only certain defendants formally moved to dismiss" because the deficiencies discussed in the opinion "appl[ied], *pari passu*, to all defendants").

8

not require commercial landlords to segregate security deposits or to hold them in trust, Plaintiff cannot assert claims for conversion against either group of Defendants.[12]

Under New York law, conversion "is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). "The two key elements of conversion are (1) the plaintiff's possessory right or interest in the property and (2) the defendant's dominion over the property or interference with it, in derogation of the plaintiff's rights." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 629 (2d Cir. 2020) (cleaned up). Because Plaintiff has failed to allege adequately the first element of conversion, the Court need not consider the second element.

Although the Court applies New York law to Plaintiff's conversion claim, the Sublease (construed under Illinois law) governs the nature of Plaintiff's interest in the Security Deposit. *See Lund's Inc. v. Chem. Bank*, 870 F.2d 840, 845 (2d Cir. 1989) (noting that there is "no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" and separately applying Minnesota and New York law to different issues underlying a conversion claim) (internal citation omitted); *Weizmann Inst. of Sc. v. Neschis*, 229 F. Supp. 2d 234, 250 (S.D.N.Y. 2002) (generally applying New York law to a conversion claim arising from a contract formed by the by-laws of a Liechtenstein foundation, but concluding that the court may "apply Liechtenstein law in determining some of the issues arising out of the [p]laintiffs'

---

[12] The Executives argue that Plaintiff failed to state a claim for conversion against them because the Amended Complaint does not adequately allege that they were employed at relevant times or took part in any act of conversion committed by Sizmek. *See* Bronstein Mem. in Supp. of Mot. at 6–7; Saunders Mem. in Supp. of Mot. at 7–13. The Secured Lenders assert that Plaintiff did not have a right to the Security Deposit under the Sublease at the time it was swept, that the Secured Lenders were contractually authorized to sweep the Security Deposit, and that the Security Deposit is not sufficiently traceable for conversion to apply. *See* Secured Lenders Mem. in Supp. of Mot. at 7–11.

claims"); *see also* Pl. Mem. in Opp. at 10 (conceding that "Illinois law may govern interpretation of the [Sublease]").

Under Paragraph 6 of the Sublease, assuming it was not in default of its rent payment obligations, Plaintiff had a right to have its Security Deposit returned within thirty days of the expiration of the Sublease.[13] Agr. at 3, ¶ 6. By its terms, the Sublease does not require Sizmek to segregate the Security Deposit or to hold it in trust, *see generally* Agr., and allows Sizmek to draw upon the Security Deposit if Plaintiff defaults, *id.* at 3, ¶ 6. Chicago's Residential Landlord and Tenant Ordinance ("RLTO") requires residential landlords leasing property in Chicago to segregate security deposits, *see* Chicago Mun. Code § 5-12-080 (2022), and Illinois law generally regulates the treatment of residential security deposits, *see* 765 Ill. Comp. Stat. Ann. 715 (West 2022); 815 Ill. Comp. Stat. Ann. 165/3 (West 2022). Courts applying local law have, therefore, held that *residential* landlords hold security deposits in trust for their tenants' benefit. *See, e.g.*, *Andrews v. Qiu*, 2022 IL App (1st) 200544-U, ¶ 57 (Ill. App. Ct. Mar. 24, 2022); *Steenes v. MAC Prop. Mgmt., LLC*, 16 N.E.3d 243, 248 (Ill. App. Ct. 2014); *In re Frempong*, 460 B.R. 189, 193–95 (Bankr. N.D. Ill. 2011). But Plaintiff has not proffered (and the Court has not found) any Chicago or Illinois law imposing the same obligations on *commercial* landlords. *See Chudzik v. Georgio*, 2014 IL App (1st) 132330-U, ¶ 15 (Ill. App. Ct. 2014) (concluding that "money paid [by a commercial tenant] as a security deposit is not the proper subject of a conversion claim" and that "a claim for recovery of funds paid under a lease as a security deposit [by a commercial tenant] is a claim on the contract") (internal citation omitted).[14] In opposing

---

[13] By its terms, the Sublease expired on June 30, 2021, Agr. at 1, ¶ 3; Sizmek rejected the Sublease early in the bankruptcy, however, Pl. Mem. in Opp., Dkt. 73, at 3.

[14] The cases Plaintiff cites to the contrary either involve residential tenants or inapplicable law. *See Starr v. Gay*, 822 N.E.2d 89, 92 (Ill. App. Ct. 2004) (interpreting section 5-12-080(a) of the RLTO with respect to a residential tenant's security deposit and citing *Beal Bank, S.S.B. v. Airport Indus. Ltd. P'ship*, 812 A.2d 866, 868 (Conn. App. Ct. 2003), for the principle that a landlord holds a residential tenant's property in trust); *Beal Bank*,

the motion to dismiss, in lieu of citing to controlling law, Plaintiff pointed to its Amended Complaint in which it alleges, *ipse dixit*, that Sizmek "was holding the funds in trust for the benefit of Nitel." Pl. Mem. in Opp. at 11 (citing Am. Compl. ¶ 30). The Court does not, however, have to accept as true a legal conclusion that is masquerading as a factual allegation. *See Iqbal*, 556 U.S. at 678.

The Seventh Circuit has stated in dicta that "[i]t is not hard to imagine arrangements that entitle landlords to treat security deposits as their own while tenancy continues . . . ." *In re McGee*, 353 F.3d 537, 539 (7th Cir. 2003). Under such circumstances, "[i]f the lease or governing statute treats the deposit as a form of loan to the landlord in order to create the possibility of a setoff if the tenant later incurs a debt to the landlord, then the tenant becomes an unsecured creditor in bankruptcy." *Id.* The Sublease here does just that: it allows Sizmek to draw upon the Security Deposit if Plaintiff defaults, and it does not require Sizmek separately to preserve the funds for Plaintiff's benefit in trust. *See* Agr. at 3, ¶ 6. As a result, Plaintiff effectively gave Sizmek an unsecured loan. *See In re McGee*, 353 F.3d at 539–40 ("On this understanding, each side's obligation—the tenant's to pay rent and cover any damage, and the landlord's to repay the deposit—is unsecured, which makes the debts 'mutual' and readily offset."). Because Sizmek refused to return the Security Deposit (by analogy, it refused to repay the loan), Plaintiff must seek recovery as an unsecured creditor in Sizmek's bankruptcy proceeding; it cannot pursue a conversion action against Sizmek's Secured Creditors or against its executives. *See Chudzik*, 2014 IL 132330-U, ¶ 15; *Karimi v. 401 N. Wabash Venture, LLC*,

---

*S.S.B.*, 812 A.2d at 463–64 (applying Connecticut law); *Wold v DRI/OLD Colony Master Tenant, LLC*, No. 2016CH14968, 2017 WL 9285352, at *3 (Ill. Cir. Ct. Oct. 18, 2017) (addressing alleged violations of the RLTO with respect to residential tenants' security deposits); *Draw v. Shea*, 2016 IL App (1st) 151368-U, ¶ 2 (Ill. App. Ct. Oct. 18, 2016) (addressing an alleged violation of the RLTO with respect to a residential tenant's security deposit); *In re Frempong*, 460 B.R. 189, 193 (Bankr. N.D. Ill. 2011) (addressing an alleged violation of the RLTO with respect to a residential tenant's security deposit); *Glass v. Janbach Properties, Inc.*, 425 N.Y.S.2d 343, 344 (1980) (applying New York law).

952 N.E.2d 1278, 1285 (Ill. App. Ct. 2011) (concluding that plaintiffs could not bring a claim for conversion of earnest money "represent[ing] plaintiffs' obligation to fulfill" a purchase agreement because the agreement stated that the funds would "be held for the mutual benefit of the [s]eller and [p]urchaser" and the "general rule" is that "an action for conversion may not be maintained for money representing a general debt or obligation") (citation omitted).

In short, Plaintiff's conversion claims against both the Individual Defendants and the Secured Lenders are DISMISSED for failure to state a claim.

### B. Plaintiff Failed to State a Claim for Negligence Against the Individual Defendants

The Individual Defendants argue that Plaintiff failed to state a claim for negligence against them because the Amended Complaint does not adequately allege that they owed any duty to Plaintiff. *See* Bronstein Mem. in Supp. of Mot. at 7; Saunders Mem. in Supp. of Mot. at 14.[15] In opposition, Plaintiff argues that it sufficiently pled that Sizmek had a duty to segregate the Security Deposit and that the Individual Defendants are liable for participating in Sizmek's breach of that duty. *See* Pl. Mem. in Opp. at 16–18.

To state a claim for negligence under New York law, a plaintiff must allege "'(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)).

Plaintiff failed sufficiently to allege that Sizmek owed it a duty.[16] The only duty Plaintiff alleges in its Amended Complaint is the "duty under Illinois law to segregate the Security

---

[15] One Defendant also argues that Plaintiff's negligence claim should be dismissed because it is duplicative of its conversion claim. Saunders Mem. in Supp. of Mot. at 14–15. The Court need not address that argument to resolve the dispute.

[16] The Court, therefore, need not consider whether this duty would extend to the Individual Defendants.

Deposit and hold same for the benefit of Nitel." Am. Compl. ¶ 62. But as discussed above, because Sizmek was not obligated to segregate the Security Deposit and to preserve it in trust for Plaintiff's benefit under Chicago or Illinois law, Plaintiff has failed to allege a duty that could support a negligence claim. *See Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 395 (2d Cir. 2022) (affirming the district court's dismissal of plaintiff's negligence claim under New York law because she failed to plead that defendant owed her a duty); *Dooner v. Keefe, Bruvette & Woods, Inc.*, 157 F. Supp. 2d 265, 285 (S.D.N.Y. 2001) (concluding that a plaintiff failed to state a claim for negligence under New York law against either a corporation or its former CEO because she "failed to allege any cognizable duty of care that the defendants owed to her and which they breached").

Plaintiff's negligence claim against the Individual Defendants is, therefore, DISMISSED for failure to state a claim.

### C. Plaintiff Failed to State a Claim for Unjust Enrichment Against the Secured Lenders

The Secured Lenders assert that Plaintiff failed to state a claim for unjust enrichment because its rights with respect to the Security Deposit are governed by the Sublease, Plaintiff did not have a relationship of any kind with the Secured Lenders, and Plaintiff failed to raise an inference of unfairness. Secured Lenders Mem. in Supp. of Mot., Dkt. 71, at 11–13. In opposition, Plaintiff argues that it does not have to have a contractual relationship with the Secured Lenders, that the Secured Lenders were sufficiently connected to Plaintiff, and that the Secured Lenders unfairly retained the Security Deposit knowing that it belonged to Plaintiff. Pl. Mem. in Opp. at 18–19.

"To state a claim for unjust enrichment in New York, a plaintiff must allege that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances

13

were such that equity and good conscience require defendants to make restitution." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (citations omitted).[17] An unjust enrichment claim is barred "if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract." *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015). Because Federal Rule of Civil Procedure Rule 8(e)(2) establishes a liberal alternative pleading policy, *Labajo*, 478 F. Supp. 2d at 531, an unjust enrichment claim is normally subject to dismissal on the pleadings only when it is clear from the face of the complaint that an express contract is controlling, *MacPhee v. Verizon Commc'ns Inc.*, No. 06-CV-7870 (BSJ), 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15, 2008); *see also Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009) ("[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." (citations omitted)).

Although Plaintiff does not have a contractual relationship with the Secured Lenders, the disposition of its Security Deposit is expressly governed by its Sublease with Sizmek. *See* Agr. at 3, ¶ 6. Plaintiff cannot, therefore, assert an unjust enrichment claim based on the Secured Lenders' alleged wrongful retention of the Security Deposit. *See Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, 17 civ. 8528 (PGG), 2022 WL 836890, at *10 (S.D.N.Y. Mar. 21, 2022) (concluding that plaintiff's unjust enrichment claim was barred by a lease governing the dispute's subject matter even though it was "brought by a non-party to the [l]ease").

Plaintiff's unjust enrichment claim against the Secured Lenders is DISMISSED for failure to state a claim.

---

[17] Plaintiff and the Secured Lenders both applied New York law to Plaintiff's unjust enrichment claim. *See* Secured Lenders Mem. in Supp. of Mot. at 11; Pl. Mem. in Opp. at 18.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in full, and the cross-claims brought by the Individual Defendants are DISMISSED as moot. The Clerk of Court is respectfully directed to terminate the open motions at Docket Entries 62, 67, and 70, and to close the case.

**SO ORDERED.**

Date: October 18, 2022　　　　　　　　　　　　　　　　　　　VALERIE CAPRONI
New York, New York　　　　　　　　　　　　　　　　　　　United States District Judge